**TELCO COMMUNICATIONS,
INC., Plaintiff,**

**v.**

**S. Mason CARBAUGH, as he is Commissioner of the Department of Agriculture and Consumer Services of the Commonwealth of Virginia, Defendant.**

**Civ. A. No. 88–0471–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 16, 1988.

Francis E. Telegadas, John G. Douglass, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., Peter S. Brooks, Louis J. Scerra, Jr., Goldstein & Manello, Boston, Mass., for plaintiff.

Mary Sue Terry, Atty. Gen., Gail S. Marshall, Deputy Atty. Gen., Guy W. Horsley, Jr., Sr. Asst. Atty. Gen., Edward P. Nolde, Jas. P. Wheeler, Asst. Attys. Gen., Antitrust & Consumer Litigation Section, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on cross motions for partial summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff, Telco Communications, Inc. ("Telco"), has challenged five provisions of the Virginia charitable solicitation law as facially violative of the First and Fourteenth Amendments. Telco has also asserted that its activities in Virginia do not fall within the definition of charitable solicitation established in the statute and thus argue that they are not subject to its requirements. This latter argument is not raised in the instant motion—jury trial is scheduled for November 23, 1988. Both parties have agreed that the constitutional challenge may appropriately be decided on summary judgment as there are no factual issues in dispute.

The motions have been fully briefed and argued and are ripe for disposition. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. For the reasons which follow, the Court will grant plaintiff's motion for partial summary judgment and will deny defendant's cross motion for partial summary judgment.

Plaintiff is a Rhode Island corporation engaged in the business of providing fund raising services to charitable organizations and labor unions for a fee. Telco also publishes handbooks on topics relating to public health and safety. Telco has contracted with local police fraternal organizations in the Commonwealth of Virginia to publish and distribute a pamphlet on their behalf and to solicit advertisements to appear in the publication.

In March, 1988, Telco was notified by Virginia officials that it was being investigated for alleged violations of the charitable solicitation law which warranted suspension or revocation of Telco's registration to solicit charitable contributions in Virginia. Telco met with representatives of the State Office of Consumer Affairs on July 6, 1988, but no resolution of the charges was reached at that time. The state has taken no further administrative action pending resolution of Telco's suit in this Court.

Telco challenges five specific provisions of the Virginia Code. Each provision will be set out in pertinent part below with the Court's discussion.

### Discussion

■■■ The Supreme Court has made it clear that charitable solicitation is noncommercial speech fully protected by the First Amendment. *See Riley v. National Federation of the Blind of N.C.,* —— U.S. ——, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) ("the solicitation of charitable contributions is protected speech"); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed. 2d 73 (1980) ("charitable solicitations are so intertwined with speech that they are entitled to the protections of the First Amendment"). Nor does the fact that a paid solicitor is used as part of a fund raising campaign deprive a charitable organization of its First Amendment protections. *See Secretary of State of Maryland v. Joseph H. Munson Company,* 467 U.S. 947, 967 n. 16, 104 S.Ct. 2839, 2852 n. 16, 81 L.Ed.2d 786 (1984). Further, those protections extend as well to the paid professional solicitor: a "speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley,* 108 S.Ct. at 2680.

■■■ Because the professional solicitation of charitable contributions is protected by the First Amendment, any "direct and substantial limitation" on that speech must necessarily be subjected to rigorous scrutiny. That is, the state bears the burden of showing that the statutory provisions at issue protect a strong subordinating interest that it is entitled to protect, and are narrowly tailored to serve only that interest. *Munson,* 467 U.S. at 960–61, 104 S.Ct. at 2848–49.

### Disclosure of Minimum Percentage

§ 57–55.1—It shall be a violation of this chapter for a professional solicitor to solicit contributions from a potential donor in this Commonwealth without clearly and conspicuously *disclosing to the potential donor prior to orally requesting a contribution, or contemporaneously with a written request for a contribution, at the point of solicitation, the minimum percentage of any amount contributed which will be received by the charitable or civic organization for its own use.*

Telco's challenge to this provision is directly governed by *Riley v. National Federation of the Blind of N.C.,* —— U.S. ——, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). In *Riley,* the Supreme Court struck down a North Carolina statute that required a professional solicitor to disclose to potential donors the percentage of charitable contributions collected during the previous 12 months that were actually turned over to charity. Justice Brennan, writing for the majority, stated that "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech." *Id.* 108 S.Ct. at 2677. As such, the regulation was subjected to, but could not survive exacting First Amendment scrutiny. The Court found that the state's interest in informing donors how the money they contribute to charity is actually spent was not

as weighty as asserted, and that the means chosen to protect that interest were "unduly burdensome and not narrowly tailored." *Id.* 108 S.Ct. at 2678.

■ The Virginia statutory section at issue here is facially invalid under the holding in *Riley*. Indeed, the state has not argued that the statute is in fact constitutional. Instead, the state asserts that there is no case or controversy with respect to this claim because the state has not threatened Telco with any sanction for violation of § 57–55.1 since the decision in *Riley* was issued.

The weakness of this argument, as Telco points out, is that it was not until the state was forced to respond to the instant motion that it announced its intent not to enforce the provision. Additionally, Virginia cited Telco for violating the provision in March 1988, after the Court of Appeals for the Fourth Circuit had affirmed the district court's invalidation of the North Carolina statute. *See Riley v. National Federal Federation of the Blind of N.C.*, 817 F.2d 102 (4th Cir.1987) (per curiam). Further, in their answer to Telco's complaint, the defendant has denied that § 57–55.1 was unconstitutional. Thus, although the state did not pursue the issue after March, 1988, their position up until oral argument has consistently been that the provision is not unconstitutional.

■ A case or controversy exists if a party has suffered an actual or threatened injury, the injury is traceable to the defendant's conduct, and there is substantial likelihood that the relief requested will redress the injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). As heretofore noted, there is ample record in this case for the Court to conclude, as it does, that there is a live case or controversy.

### Disclosure of Availability of Financial Statement

§ 57–55.2—Every professional solicitor who solicits contributions from a prospective contributor in this Common-wealth: ... (iii) *shall further disclose, in writing, the fact that a financial statement for the last fiscal year is available from the State Office of Consumer Affairs.*

■ Telco relies heavily on *Riley* to support its contention that the requirement of a writing disclosing that a financial statement for the last fiscal year is available from the state Office of Consumer Affairs is an unconstitutional content-based regulation of speech. Telco urges that the statute is unduly burdensome and that the state itself could just as easily publish information which would serve its interests.

For its part, the state argues that the disclosure in § 57–55.2(iii) is "a *de minimus* requirement" that does not hamper fund raising efforts. Telco, so the state argues, includes the statement on its receipt and therefore it cannot be seen to discourage donations. Further, the state contends that the requirement is such that the disclosure is made to a very specifically targeted audience: those who are interested in making charitable contributions through a particular solicitor.

The Court is satisfied that under *Riley*, the requirement of § 57–55.2(iii) is a content-based regulation of speech—it compels the speaker to include speech that it would not otherwise include. *See Riley*, 108 S.Ct. at 2677. The provision is therefore subject to exacting scrutiny.

The state's asserted interests protected by the disclosure requirement are education of the public and prevention of fraud and harassment. Additionally, the state asserts an interest in "preventing the coercion inherent in solicitations for the police, and in protecting the reputation of the police from public misapprehension of the integrity of a police force which requests donations." This latter interest is a nonstarter because the statute applies to *all* solicitations, not just those made on behalf of the police.

The issue, as the Court has suggested, thus comes down to whether the requirement is unduly burdensome and narrowly tailored. Admittedly, the provision is less

burdensome than the disclosure required by the statute in *Riley*. The solicitor is not required to make the statement prior to or as part of an initial contact with a potential donee. However, Telco argues that the solicitation is not completed until a contribution is made and that it is not uncommon for donees to refuse to pay, or to ask for a refund after receiving the writing with the disclosure. Further, arguably "more benign and narrowly tailored options are available." *Riley*, 108 S.Ct. at 2679. As an example, the court in *Riley* suggests that "the State may itself publish" the information and thus "communicate the desired information to the public without burdening a speaker with unwanted speech during the course of a solicitation." *Id.* The Court also suggests that "the State may vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements." *Id.* These suggestions, as pointed out in *Riley*, are more "in keeping with the First Amendment directive that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored." *Id.*

█ Similarly, this Court finds that § 57–55.2(iii) unnecessarily and impermissibly infringes on protected First Amendment rights.

*Filing of Text Prior to Solicitation*

§ 57–61 D—*At least ten days prior to the commencement of each solicitation campaign, the solicitor shall file with the Commissioner a copy of the contract entered into with any charitable or civic organization and shall file a completed "Solicitation Notice" on forms prescribed by the Commissioner. The Solicitation Notice shall be in writing and under oath, and shall include a description of the solicitation event or campaign, the projected starting and ending dates of the campaign, and the location and telephone number from which the solicitation will be conducted. Copies of all campaign solicitation literature, including the text of any solicitation to be made orally, shall be attached to the Solicitation Notice. The charitable or civic organization on whose behalf the solicitor is acting shall certify that the Solicitation Notice and accompanying material are true and complete.*

Plaintiff challenges only that portion of 61 D that requires prior submission of "[c]opies of all campaign literature, including the text of any solicitations to be made orally." Telco asserts that this is clear and impermissible prior restraint. Telco argues that the challenged regulation is equivalent to asking a newspaper to submit its editorials to the state in advance of publication. The state's concerns, Telco urges, can be better accommodated by rules that "punish unprotected speech after publication, rather than impose the restraint of prior submission and adherence to a script before the exercise of free speech rights."

The state's position is that "[n]o script is required to be created or used" under the statute. However, if there is a script, then it must be filed with the state at least ten days before solicitation is made. Additionally, if there is no script "the solicitor may instead file an outline of the points to be covered by the solicitation."

These statements are simply not supported by the wording of the statute, nor by the language of the forms the state provides for filing a Solicitation Notice. Further, the state's modified interpretation is irrelevant for purposes of constitutional analysis.

The state further asserts that once the Commissioner receives the script it is not "censored." "Instead," the defendant states, the staff "reviews it only for possible misrepresentations." When the office "recognizes a problem" they request that the solicitor "amend the script and submit an amended copy." These changes must be made before "approval" is given to begin solicitations.

This Court cannot escape the conclusion that if it looks and acts like "censorship," then it must be "censorship." As such, § 57–61 D infringes on rights protected by the First Amendment.

The state conceded at oral argument that § 57–61 D does not prevent fraud. Instead, defendant asserts that the purpose of the prior submission is to catch "innocent misrepresentations" such as when a paid solicitor uses the pronoun "we" to imply that the solicitor and charity are indistinguishable entities.

This Court cannot agree that this interest is substantial or weighty enough to justify the prior submission and censorship established in provision 61 D. Nor does the Court find the state's legal authority either apposite or persuasive.

The only legal support that the state cites for its position that prior submission is permissible is *Times Film Corp. v. Chicago,* 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) (requirement of prior submission of motion picture to censorship board is not necessarily unconstitutional). That case, however, was substantially modified by a later decision in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (prior submission of motion picture to censor is valid only if there are adequate procedural safeguards available). Further, *Times Film Corp.,* by its own language, applied to prior restraint of motion pictures and is silent on the issue of censorship of the printed or spoken word.

### Suspension or Revocation of Registration

§ 56–61.1 B—If the Commissioner at any time determines that (i) the requirements of § 57–49 or § 57–61 have not been met, or (ii) the registrant has violated, within the preceding twelve months, any requirement of §§ 57–54, 57–55.2 or § 57–57 or any regulations adopted pursuant to § 57–66, then the Commissioner may suspend or revoke the registration by a written case decision made in conformance with the Administrative Process Act (§ 9–6.14:1 et seq.)

§ 57–61.1 C—If the Commissioner finds that the public health, safety or welfare require urgent action, and if he also finds reasonable cause to believe that the registrant has failed to comply with § 57–49 or § 57–61 or has violated §§ 57–54, 57–55.2 or § 57–57 or any regulations adopted pursuant to § 57–66, then the Commissioner may provide advance notice of as little as twenty-four hours for the conduct of a hearing under either § 9–6.14:11 or § 9–6.14:12 of the Administrative Process Act.

Plaintiff's first position is that to the extent subsections B and C allow the Commissioner to revoke or suspend registration of a charitable solicitor for failure to comply with § 57–55.2 or 57–61, they are "equally violative of First Amendment rights to free speech." Thus, if the Court strikes down either or both of those sections, § 57–61.1 B and C must necessarily be modified. The Court agrees.

Second, Telco asserts that subsections B and C are overbroad and unconstitutional prior restraints in that they "allow the Commissioner to revoke a license granted by the state ... on the basis of a single unprotected misrepresentation in a past solicitation."

As a preliminary matter, the state asserts that Telco is without standing to challenge the suspension and revocation provisions apart from its challenge to §§ 57–55.2 and 57–61, because the provisions do not affect the rights of Telco's clients. If Telco's registration is suspended or revoked, the state argues, the fraternal organization's speech rights are unaffected—it may simply hire some other professional solicitor.

The Court does not agree. Any charitable organization has an interest in whether its chosen spokesperson is allowed to speak. The state's argument is analogous to suggesting that a reporter for the New York Times has no First Amendment interest in whether the Times is allowed to publish, because he or she can always go to work for the Washington Post. This position is untenable.

Beyond the issue of standing, the state claims that there is an important distinction between suspension and revocation. Suspension is a temporary measure designed to ensure that the requirements of registration are met. Suspension thus lasts only so long as the solicitor takes to com-

plete its registration. Revocation, on the other hand, is used as a punishment for past misconduct. The state points out that the statute allows the Commissioner to consider only violations that have occurred within the preceding 12 months. Thus, because registration lasts for only one year, the state concludes that the maximum period of revocation is 12 months. Because the object of the revocation is temporary punishment and not absolute suppression of solicitation activity, the state argues that it is constitutionally sound.

The state's interpretation, however, is contradicted by the language of the statute. The statute does not limit suspensions to incomplete registrations, nor does it limit revocation to a period of only 12 months. The statute simply allows the state to suspend or revoke the registration of a professional solicitor or charitable organization if the Commissioner determines that the registration requirements have not been met, or if the registrant has violated any requirement of § 57–54 (contracts between charity and professional solicitor must be in writing and filed with Commissioner), § 57–55.2 (disclosure requirements), or § 57–57 (list of prohibited acts of misrepresentation). Thus, the statute allows the state to freeze future protected speech either on the basis of a past misrepresentation—past unprotected speech activity—or on the basis of a past failure to comply with statutory requirements unrelated to speech, such as failing to file a written copy of the solicitation contract with the state Commissioner.

 The Supreme Court has stated that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). Thus, *"any* system of prior restraints of expression comes to th[e] Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963); *see Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575,

1578, 29 L.Ed.2d 1 (1971). Accordingly, the government carries "a heavy burden of showing justification for the imposition of such a restraint." *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971) (quoting *Austin*, 402 U.S. at 419, 91 S.Ct. at 1578).

 Under *Near v. State of Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), a state may not enjoin future protected speech in order to punish past unprotected speech. As the Court stated in *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 316 n. 13, 100 S.Ct. 1156, 1161 n. 13, 63 L.Ed.2d 413 (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)), "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them ... beforehand." In *Near* the Court struck down a Minnesota statute which allowed the state to enjoin as a public nuisance any newspaper publishing malicious, scandalous, or defamatory material. The Court stated that the "object of the statute is not punishment, in the ordinary sense, but suppression of the offending newspaper or periodical."

In this case, one of the asserted purposes of the suspension and revocation provisions is to punish misrepresentations made in the solicitation of charitable contributions and to punish non-compliance with certain other aspects of the charitable solicitation law. The provision, however, goes well beyond punishing specific instances of past misconduct and prevents all future charitable solicitation, all future protected speech, in the Commonwealth of Virginia. Nor has the Commonwealth met the "heavy burden" placed on them to justify the restraint. Certainly there are less stringent measures that would be adequate to achieve the state's goals. Thus, §§ 57–61.1 B and C are impermissible prior restraints on protected speech.

*Conclusion*

In summary, the Court finds that each of the five challenged provisions impermissibly infringe on protected First Amendment freedoms. Accordingly, the defendant will

be permanently enjoined from enforcing §§ 57–55.1; 57–55.2(iii); 57–61 D (in part); and 57–61.1 B and C.

An appropriate Order shall issue.