563 A.2d 1276

COMMONWEALTH of Pennsylvania, by Ernest D. PREATE, Jr., Attorney General, Plaintiff,

v.

WATSON & HUGHEY COMPANY et al., Defendants.

Commonwealth Court of Pennsylvania.

Argued June 9, 1989.

Decided Aug. 21, 1989.

Mollie A. McCurdy, Chief Deputy Atty. Gen., Mark A. Pacella, Mary Beth Osborne, Deputies Attys. Gen., and Ernest D. Preate, Jr., Atty. Gen., Charitable Trust and Organizations Section, Office of Atty. Gen., Harrisburg, for plaintiff.

Theodore A. Adler, Reager, Selkowitz & Adler, P.C., Harrisburg, and Errol Copilevitz, John P. Jennings, Jr., Copilevitz, Bryant, Gray & Jennings, P.C., Kansas City, Mo., for Watson & Hughey Co., et al., defendants.

Before BARRY and McGINLEY, JJ., and KALISH, Senior Judge.

McGINLEY, Judge.

The Commonwealth of Pennsylvania by Ernest D. Preate, Jr., Attorney General, (Commonwealth) filed a complaint in equity and motion for preliminary injunction alleging violations of the Unfair Trade Practices and Consumer Protection Law [1] (Consumer Protection Law) and the Charitable Organization Reform Act [2] (CORA). The Commonwealth requests numerous, alternative reliefs, chief among which are permanent injunctive relief, disgorgement of funds received, and civil fines and penalties. This matter is before us now on preliminary objections in the nature of a demurrer.

On or about February 16, 1989, the Commonwealth filed a complaint in equity and motion for preliminary injunction

1. Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1—201–9.2.
2. Act of April 30, 1986, P.L. 107, *as amended,* 10 P.S. §§ 161.1—161.19.

against the following defendants: The Watson and Hughey Co. (Watson & Hughey); Jerry C. Watson (Watson) and Byron Chatworth Hughey, (Hughey), partners in the Watson and Hughey Co.; Robert R. Stone, Esq. (Stone), a Washington, D.C., attorney who wrote letters on behalf of some of the defendants; seven not-for-profit charitable organizations;[3] and the Foxhall Corporation, a/k/a Wahau Corp., t/a Social Security Protection Bureau (Social Security Protection Bureau), a D.C. for-profit corporation.

On March 21, 1989, this Court signed an order agreed to by the parties which prohibits defendants from conducting sweepstakes solicitations in Pennsylvania until June 15, 1989, and which permanently enjoins defendants from using any indicia of representation of a lawyer in any solicitation for monies from Pennsylvania residents through sweepstakes or contests. The order also continued generally the Commonwealth's motion for preliminary injunction.

■ Defendants' preliminary objections in the nature of a demurrer are deemed to admit all well-pleaded facts and all inferences reasonably deduced therefrom, but not the Commonwealth's conclusions or averments of law. Upon examination, we may sustain the objections only if the Commonwealth's complaint fails to state a cause of action which, if proved, would entitle them to the relief requested, and we must overrule the objections if any doubt remains as to the propriety of dismissing the complaint. *Madden v. Jeffes*, 85 Pa.Cmwlth. 414, 482 A.2d 1162 (1984).

The Commonwealth asks this Court to permanently enjoin the defendants from engaging in specified, deceptive practices which the defendants allegedly utilized in their solicitation schemes, and the Commonwealth asks this Court to

---

**3.** American Heart Disease Prevention Foundation, Inc. (American Heart); Cancer Fund of America, Inc. (CFA); Center for Alternative Cancer Research, Inc., a/k/a Project CURE (Project CURE); Pacific West Cancer Fund, Inc. (Pacific West Cancer); Walter Cancer Research Institute, Inc. (Walker Cancer); Adopt-A-Pet, Inc., a/k/a National Animal Protection Fund (Animal Protection Fund); and National Emergency Medicine Association, Inc., a/k/a National Heart Research (National Heart).

permanently enjoin the defendants from engaging in any other unfair and deceptive acts or practices.[4] The Commonwealth also asks this Court to permanently enjoin the defendants from soliciting contributions and from conducting direct mail sweepstakes in this Commonwealth. This latter requested relief goes beyond the remedies which are provided for under either CORA or the Consumer Protection Law.

The defendants raise the following issues by way of preliminary objections: 1) that CORA is unconstitutional as applied to these defendants in that it violates the 1st and 14th amendments to the U.S. Constitution; 2(a) that the Consumer Protection Law is inapplicable to charitable organizations; 2(b) that the Consumer Protection Law is unconstitutional as applied to these defendants in that it violates the 1st and 14th amendments to the U.S. Constitution; and 3) that the Defendant Social Security Protection Bureau did not violate § 1207 of the Business Corporation Law.

We first address defendant's contention that CORA is unconstitutional as applied to these defendants. Defendants cite *Riley v. National Federation of the Blind of North Carolina*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) and its forebears, *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) and *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), in support of their position. These cases state that the speech of charitable organizations when engaged in the solicitation of funds is fully protected by the First Amendment to the United States Constitution. Defen-

---

4. Section 15(f) of CORA, 10 P.S. § 161.15(f) permits the Attorney General to bring an action in the name of the Commonwealth to enjoin "a charitable organization and its officers, ... professional fundraising counsel or professional solicitor or any other person who has violated this act or who has participated or is about to participate in any solicitation or collection by employing any device, scheme, artifice, false representation or promise, to defraud or obtain money or other property ... from continuing such violation, solicitation or collection, or engaging therein, or doing any acts in furtherance thereof and for such other relief as to [sic] the court deems appropriate."

dants contend that because such speech is fully protected, the relief which the Commonwealth seeks, *i.e.*, an injunction enjoining the defendants from engaging in specified, deceptive practices which the defendants allegedly utilized in their solicitation schemes, as well as an injunction enjoining the defendants from soliciting contributions and from conducting direct mail sweepstakes in this Commonwealth, is unconstitutional.

The U.S. Supreme Court has addressed the issue of regulation of solicitations for charitable organizations three times in recent years. The first of these cases was *Schaumburg*. In that case, a local ordinance which prohibited on-street and door-to-door solicitations for any charitable organization if greater than 25% of the donations was distributed to the paid solicitor was found unconstitutional. The Court held that such solicitation was not a "variety of purely commercial speech" and that it was, instead, fully protected speech. *Id.* 444 U.S. at 632, 100 S.Ct. at 833. The Court then engaged in a traditional first amendment analysis, querying whether the ordinance was narrowly tailored in order to achieve the municipality's primary goal, *i.e.*, the prevention of fraud. Determining that certain charities might need to spend more than 25% of their funds on administrative or fundraising expenses, and that such a need would not render solicitations by those charities fraudulent, the Court held that the ordinance limited protected speech more than was necessary to prevent fraud and was unconstitutional.

In *Munson* the Court addressed the constitutionality of a statute which forbade contracts between charities and paid fundraisers if the contracts provided that the fundraiser would retain more than 25% of the money which was donated. The statute gave the Secretary of State the discretion to waive this limitation. Nonetheless, the Court struck down this statute, holding that the statute failed the first amendment balancing test because the measure was not narrowly tailored to prevent fraud.

In the third case, *Riley,* the Supreme Court reviewed the constitutionality of a statute which: 1) defined the "reasonable fee" that a paid fundraiser may charge a charity; and 2) required paid fundraisers to affirmatively state to potential donors the percentage of funds donated within the prior twelve months which were actually given to the charity.[5] The Court struck down both provisions. With respect to the provision which defined a "reasonable fee" the Court held that because a fee in excess of 25% was not necessarily fraudulent, the provision was not narrowly tailored to prevent fraud. As to the disclosure provision, the Court held that the regulation was "content-based" and that the interest which the provision was intended to further, *i.e.,* dispelling the alleged misperception that charities receive a greater percentage of donated funds than they actually receive, was "not as weighty as the State assert[ed], and that the means chosen to accomplish it [were] unduly burdensome and not narrowly tailored." *Riley,* 487 U.S. at 798, 108 S.Ct. at 2678.

Thus, we must determine the extent to which CORA and the Consumer Protection Law may be constitutionally applied to prevent fraud and misrepresentation. The defendants do not attack the substance of CORA, or the Consumer Protection Law; but rather the penalty provisions. They also attack the additional relief which the Commonwealth seeks. We are bound, of course, by the Supreme Court's determination that solicitation for charitable organizations is fully protected speech. Thus, the relief permitted by CORA and the Consumer Protection Law, as well as the additional relief which the Commonwealth seeks, must be narrowly tailored to achieve its asserted interest in preventing fraud.

■ We examine first the constitutionality of the Commonwealth's request that we enjoin the defendants from

5. The statute also prohibited paid solicitors from engaging in solicitation without a license (whereas unpaid solicitors could engage in solicitation so long as they had applied for a permit).

soliciting contributions and from conducting direct mail sweepstakes in this Commonwealth.

There being no prior cases directly on point in this Commonwealth, we are guided in our deliberations by the decision of the U.S. District Court for the Eastern District of Virginia in *Telco Communications, Inc. v. Carbaugh*, 700 F.Supp. 294 (E.D.Va.1988). The Court in that matter was asked to determine the constitutionality of provisions which permitted the state to suspend or revoke the registration of a professional solicitor or charitable organization if the Commissioner determined that the solicitor or charity had not met the registration requirements of the law or if the registrant had violated any of the regulations (by, *inter alia*, engaging in prohibited acts of misrepresentation).[6]

Quoting numerous Supreme Court decisions holding that there is a strong presumption that prior restraints are unconstitutional,[7] the court in *Telco* struck down the suspension and revocation provisions. In so doing, the *Telco* court stated that:

> In this case, one of the asserted purposes of the suspension and revocation provisions is to punish misrepresentations made in the solicitation of charitable contributions and to punish non-compliance with certain other

6. Although CORA does not specifically provide for the permanent injunction from future solicitation of charities or fundraisers who have engaged in fraud, as does the Virginia statute under consideration in *Telco*, the Commonwealth requests that we so enjoin the defendants. Thus, the opinion of the court in *Telco* is relevant and instructive.

7. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Telco*, 700 F.Supp. at 300 (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976)). "[A ]ny system of prior restraints of expression comes to th[e] Court bearing a heavy presumption against its constitutional validity." *Telco*, 700 F.Supp. at 300 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83, 83 S.Ct. 631, 639, 645, 9 L.Ed.2d 584 (1963). "[T]he government carries a 'heavy burden of showing justification for the imposition of such a restraint.'" *Telco*, 700 F.Supp. at 300 (citing *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971). "[A] free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them ... beforehand." *Telco*, 700 F.Supp. at 300 (citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

aspects of the charitable solicitation law. The provision, however, goes well beyond punishing specific instances of past misconduct and prevents all future charitable solicitation, all future protected speech, in the Commonwealth of Virginia. Nor has the Commonwealth met the 'heavy burden' placed on them to justify the restraint. Certainly there are less stringent measures that would be adequate to achieve the state's goals.

*Telco*, 700 F.Supp. at 300.

Similarly, in the matter presently before this Court, to the extent to which the Commonwealth seeks to apply CORA to permanently enjoin the defendants from future solicitation based upon past alleged misrepresentations or omissions of registration, such application is unconstitutional as an impermissible prior restraint. Consequently, although the Commonwealth's complaint does state a cause of action, subparagraphs "b" and "c" in Counts I and II of the Commonwealth's complaint seek unconstitutional remedies;[8] we sustain the defendants' demurrer as to these subparagraphs, and we direct that these subparagraphs be stricken.

█ In subparagraph "d" in Counts I and II the Commonwealth requests this Court to order the defendants to refrain from committing, in the future, the same fraudulent and illegal acts which the Commonwealth alleges they have already committed.[9] In subparagraph "e" in Counts I and

---

**8.** Count I states in relevant part that:
   WHEREFORE, the plaintiff respectfully requests that this Court:
   . . . .
   b) Preliminarily and then permanently enjoin the defendants, their agents, successors, servants, and employees from soliciting contributions in this Commonwealth;
   c) preliminarily [sic] and then permanently enjoin the defendants, their agents, successors, representatives, servants, and employees from conducting direct mail sweepstakes in this Commonwealth;
Complaint in Equity, Count I, subparas. b, c. The Commonwealth requested the same relief in Count II, subparas. b, c.

**9.** WHEREFORE, the plaintiff respectfully requests that this Court:
   . . . .

II the Commonwealth requests that this Court enjoin defendants from failing to disclose certain material facts the disclosure of which is necessary to prevent defendants from committing acts of fraud and misrepresentation.[10] The

> d) Preliminarily and then permanently enjoin defendants, their agents, successors, representatives, servants, and employees from the following conduct:
>
> 1. Using the name, letterhead or signature of an attorney-at-law in any sweepstakes or other solicitation letter to any resident of Pennsylvania unless the attorney:
>
> (a) has been formally retained by the defendants to provide legal counsel in connection with the activities described in the letter;
>
> (b) has actually provided such counsel;
>
> (c) is available by either telephone or by mail to answer any questions which recipients may have regarding the contents of the letter, unless it is clearly and conspicuously disclosed that neither the attorney nor his office can be contacted by recipients regarding the sweepstakes or the contents of the solicitation materials and that recipients may obtain such information only from an identified alternative source at a specific alternative address and/or telephone number; and
>
> (d) has actually written the letter or has direct and final authority, supervision and control over the content of that letter.
>
> 2. Sending to any resident of Pennsylvania, in connection with a sweepstakes or other contest, any letter or other solicitation which:
>
> (a) has the capacity or tendency to cause the recipient to believe that he is a "winner" without stating clearly and conspicuously the minimum value of the prize won;
>
> (b) has the capacity or tendency to cause the recipient to believe that he is a grand prize winner when such is not the case;
>
> (c) has the capacity or tendency to cause the recipient to believe that he is a winner of a large amount of money when such is not the case;
>
> (d) has the capacity or tendency to cause the recipient to believe that the grand prize is an amount larger than the actual grand prize; or
>
> (e) fails to state clearly and conspicuously that it is most likely that the prize won is the minimum prize available and is of nominal value, if such is the case.
>
> Complaint in Equity, Count I, para. d. (Count II, para. d. is identical.)
>
> 10. WHEREFORE, the plaintiff respectfully requests that this Court:
>
> e) Preliminarily and then permanently enjoin defendants, their agents, successors, representatives, servants, and employees from failing to disclose clearly and conspicuously material facts in the solicitation of contributions or memberships in violation of the Charitable Organization Reform Act, 10 P.S. § 161.5(f), including, but not limited to, the following:
>
> 1. Providing a complete set of sweepstakes or other contest rules to all recipients of sweepstakes solicitation materials, such rules to be set forth clearly and conspicuously on a page which recipients

defendants contend that such an injunction would also constitute impermissible prior restraint. We disagree.

The injunctive relief which the Commonwealth requests in these paragraphs is narrowly tailored to achieve its goal of preventing fraud. This relief is distinguishable from the total injunctions which were requested in *Telco,* and from the provisions which were challenged and found to be unconstitutional in *Schaumburg, Munson, and Riley.* To reiterate, the Supreme Court held the latter provisions to be unconstitutional because it was not necessarily fraudulent for a charity to spend more than 25% of donations on solicitations. In the case *sub judice,* before this Court can grant the injunctive relief which the Commonwealth requests in subparagraphs "d" and "e" of Counts I and II, there must be an adjudication that the defendants have

may readily keep rather than on the back of any form which must be returned to the organization sponsoring the sweepstakes.

2. Clearly and conspicuously disclosing in the body of any sweepstakes solicitation letter, as well as in the official rules, the range of prizes available and the method of winning.

3. Clearly and conspicuously disclosing the odds of winning.

4. Clearly and conspicuously disclosing in both the solicitation letter and the official rules the fact that the dollar amount stated in the title of a sweepstakes is not the amount of the top prize, if such is the case.

5. Clearly and conspicuously disclosing the fact that the majority of "winners" will only win a nominal prize and the amount of this prize, if such is the case.

6. Clearly and conspicuously disclosing the number and amount of all prizes to be awarded in the sweepstakes, including the value of the minimum prize and the number of winners who will receive each prize other than the minimum.

7. Clearly and conspicuously disclosing the actual value of the prize that the "winner" will win, and the fact that the recipient is not the winner of the top prize if this is the case.

8. Clearly and conspicuously disclosing the fact that the recipient need not make a donation to, or purchase a membership in, the sponsoring organization in order to receive his prize and that there is no connection between the prize which he will receive and any donation which he may decide to send.

9. Clearly and conspicuously disclosing the meaning of the term "cooperative sweepstakes", [sic] and the way in which such a "cooperative sweepstakes" may reduce the recipient's chances of winning a prize of substantial value, if such is the case.

Complaint in Equity, Count I, para. e. (Count II, para. e. is identical.)

engaged in these practices, and that these practices violate CORA and the Consumer Protection Law. Thus, if this Court should at some future point in these proceedings determine that the defendants have engaged in fraudulent practices, this Court may, commensurate with the dictates of the U.S. Constitution as interpreted by the U.S. Supreme Court, enjoin the defendants from engaging in such fraudulent practices. The defendants' constitutional rights are not violated by an injunction against committing fraud and misrepresentation. Consequently, we dismiss the demurrer as to subparagraphs "d" and "e" of Counts I and II.[11]

We next address the defendants' contention that the Consumer Protection Law is inapplicable to charitable organizations or is unconstitutional as applied. The defendants base this contention on three sub-arguments: 1) charitable solicitation does not constitute "trade" and "commerce" as defined by the Consumer Protection Law; 2) the Consumer Protection Law does not apply because CORA provides the exclusive remedy; and 3) the application of the Consumer Protection Law to charitable solicitation is unconstitutional.

■ We first reject the defendants' contention that solicitations of the nature and type alleged do not fall within the definition of "trade" and "commerce" as specified in the Consumer Protection Law. "Trade" and "commerce" are defined as:

the *advertising,* offering for sale, sale or *distribution of any services* and *any property,* tangible or intangible, real, personal or mixed, any other article, commodity, *or thing of value* wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

**11.** The U.S. Supreme Court arguably contemplated such a result when it stated in *Riley,* by way of dictum, that:

[T]he State may vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements. These more narrowly tailored rules are in keeping with the First Amendment directive that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored.

*Riley,* 487 U.S. at 800, 108 S.Ct. at 2679.

Section 201-2(3) of the Consumer Protection Law, 71 P.S. § 201-2(3) (emphasis added). Certainly, the defendants' sweepstakes solicitations constitute the *advertising* of some *thing of value.*

■ We further reject the defendants' contention that the Consumer Protection Law does not apply to solicitations by charities because CORA is an exclusive remedy. This Court held in *Commonwealth v. Society of the 28th Division,* 113 Pa.Cmwlth. 456, 538 A.2d 76 (1988), that the Consumer Protection Law applied to such solicitations. Although we agree with defendants that one of this Court's holdings in that case has since been overruled by *Riley,*[12] the decision in *Riley* in no way affects our ruling that such solicitations fall within the purview of the Consumer Protection Law.[13]

The defendants next contend, *arguendo,* that even if CORA is not an exclusive remedy, that the Consumer Protection Law is unconstitutional as applied in these proceedings. The defendants' arguments vis-a-vis this issue are identical to the arguments which they set forth in support of their contention that CORA as applied to these proceedings is unconstitutional. We reject this argument for the same reasons that we stated above.

■ Lastly, we address the defendants' argument that defendant Social Security Protection Bureau did not violate Section 207 of the Business Corporation Law[14] by failing to

12. We upheld the requirement in CORA that a charity disclose the amount or percentage of funds contributed which the charity receives as opposed to the fundraiser. This precise issue was addressed by the U.S. Supreme Court in *Riley.*

13. Numerous cases have held that conduct which is governed by other statutes is also within the purview of the Consumer Protection Law unless it is expressly excluded. *See, e.g., Commonwealth v. National Apartment Leasing Co.,* 108 Pa.Cmwlth. 300, 529 A.2d 1157 (1987); *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427 (1986); *Pennsylvania Bankers Association v. Commonwealth,* 58 Pa.Cmwlth. 170, 427 A.2d 730 (1981); *Safeguard Investment Corp. v. Commonwealth,* 44 Pa. Cmwlth. 417, 404 A.2d 720 (1979).

14. Act of May 5, 1933, P.L. 364, *as amended,* 15 P.S. § 1207, *repealed* by Section 302 of the Act of December 21, 1988, P.L. 1444.

register to do business in this Commonwealth because the solicitation which was engaged in on its behalf does not constitute "doing business." The defendants claim that they are exempt from the registration requirement pursuant to Section 1001(B)(6) of the Business Corporation Law, *formerly* 15 P.S. § 2001(B)(6). This section states that:

Without excluding other activities which may not constitute doing business in this Commonwealth, a foreign business corporation shall not be considered to be doing business in this Commonwealth for the purposes of this section and of sections 1012 and 1014 of this act, but not necessarily for the purposes of taxation or of section 1011 of this act concerning service of process, by reason of carrying on in this Commonwealth any one or more of the following activities:

. . . .

(6) Soliciting or procuring orders, whether by mail or through employes or agents or otherwise, and maintaining offices therefor, where such orders require acceptance without this Commonwealth before becoming binding contracts;

The Commonwealth alleges in its complaint that "[d]efendant Social Security [Protection] Bureau is a for-profit corporation currently engaged in trade and commerce in Pennsylvania through direct mail fundraising solicitations but is not registered to do business in Pennsylvania," [15] and the Commonwealth contends that the defendants do not fit within the above exception. The Commonwealth avers in its complaint that the solicitation letters which were sent on behalf of the Social Security Protection Bureau constitute offers to potential donors to join the Social Security Protec-

It seemingly would have been more appropriate if the Commonwealth had averred in Count III that the defendants violated Section 1001 of the Law, *formerly* 15 § P.S. § 2001, as opposed to Section 207 of the Act. Because the defendants did not raise this issue, we will not address it further.

**15.** Complaint in Equity, para. 17.

tion Bureau, which a donor accepts by mailing a check for $7.00.[16] Thus, the Commonwealth contends, the defendants are not soliciting orders which must be accepted by the defendants outside of the Commonwealth. Taking the Commonwealth's well-pleaded averments as true, the defendants' actions do not fit within the exception to doing business as set forth at Section 1001(B)(6) of the Business Corporation Law. Thus, the Commonwealth has stated a claim upon which relief may be granted. We overrule the demurrer to Count III.

By way of summary, then, the defendants' demurrer to Count I is sustained as to subsections "b" and "c," which we order stricken, and is overruled as to subsections "a," "d" and "e"-"i." The defendants' demurrer to Count II is likewise sustained as to subsections "b" and "c," which we order stricken, and is overruled as to subsections "a," "d" and "e"-"i." The defendants' demurrer as to Count III is overruled. The defendants are directed to file an answer within 20 days.

## ORDER

AND NOW, this 21st day of August, 1989, the defendants' demurrer to Count I is sustained as to subsections "b" and "c," which we order stricken, and is overruled as to subsections "a," "d" and "e"-"i." The defendants' demurrer to Count II is likewise sustained as to subsections "b" and "c," which we order stricken, and is overruled as to subsections "a," "d" and "e"-"i." The defendants' demurrer as to Count III is overruled. The defendants are directed to file an answer within 20 days.

16. Complaint in Equity, para. 22., Exhibit 2.