**D.E.L.T.A. RESCUE, Petitioner**

v.

**BUREAU OF CHARITABLE ORGANIZATIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 24, 2009.

Decided July 8, 2009.

Thomas Vecchio, Philadelphia, for petitioner.

Martha H. Brown, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

D.E.L.T.A. Rescue (DELTA) petitions for review of the Final Adjudication and Order (A & O) of the Secretary of the Commonwealth (Secretary), which imposed an administrative fine of $3,000.00 against DELTA and ordered DELTA to cease its fundraising and solicitation within the Commonwealth until DELTA paid the administrative fine and complied with the registration, notification, and disclosure requirements of the Solicitation of Funds for Charitable Purposes Act (Act).[1] DELTA argues that: (1) the Act unconstitutionally infringes on DELTA's First and Fourteenth Amendment rights; (2) the disclosure requirement that the Secretary found DELTA to have violated is unconstitutionally vague; (3) the Secretary and the Department of State, Bureau of Charitable Organizations (Bureau) denied DELTA due process of law; (4) the Secretary's findings are not supported by substantial evidence; and (5) the Bureau is estopped from enforcing the Act against DELTA.

DELTA is a charity incorporated in California, the purpose of which is to provide "life-long care for over 1,200 abandoned

---

1. Act of December 19, 1990, P.L. 1200, *as amended,* 10 P.S. §§ 162.1–.23.

dogs and cats at its shelter in Acton, Ca." (DELTA's Charitable Organization Registration Statement—Form BCO–10 For the Fiscal Year Which Ended 12/31/99 (1999 Registration Statement) at 1.) In 1997, the Bureau initiated an investigation into whether DELTA was soliciting contributions in Pennsylvania without being registered as a charitable organization with the Bureau. As a result of this investigation, on June 7, 2000, the Secretary issued an order approving a Consent Agreement and Order (Consent Agreement) between DELTA and the Bureau in which DELTA admitted that it had solicited funds within the Commonwealth without first registering as a charitable organization with the Bureau as required by Section 15(a)(1) of the Act.[2] In the Consent Agreement, DELTA agreed to register with the Bureau as a charitable organization, not to solicit

funds until it had registered as a charitable organization, and to pay a $5,000.00 administrative fine. DELTA registered as a charitable organization on July 7, 2000. Thereafter, DELTA maintained its registration "as a charitable organization from December 7, 2000 through November 11, 2001." (A & O Findings of Fact ¶ 7.) The record does not reflect that DELTA submitted an application for registration after this time period.

On January 4, 2001 the Bureau received a solicitation that DELTA had sent to an individual residing in Enola, Pennsylvania (First Solicitation).[3] This solicitation listed DELTA's address as "P.O. Box 9, Glendale, CA 91209." (First Solicitation, Hr'g Tr. Ex. C–3.) Additionally, the First Solicitation did not contain a disclosure statement required by Section 13(c) of the Act.[4]

**2.** 10 P.S. § 162.15(a)(1). Section 15(a)(1) provides:

> **(a) General rule.**—Regardless of a person's intent or the lack of injury, the following acts and practices are prohibited in the planning, conduct or execution of any solicitation or charitable sales promotion:
>
> (1) Operating in violation of, or failing to comply with, any of the requirements of this act, regulations of the department or an order of the secretary, or soliciting contributions after registration with the department has expired or has been suspended or revoked or soliciting contributions prior to the solicitation notice and contract having been approved by the department.

10 P.S. § 162.15(a)(1).

**3.** The First Solicitation was contained in an envelope stating "2000 Christmas Love Stocking Enclosed" and included a donation form with checkboxes suggesting donations ranging from $25.00 to $500.00 and options to specify the donations "[t]o rescue pets in the wilderness . . . [t]o spay or neuter and medicate these animals . . . [or t]o care for them at our beautiful 'no-kill' mountain top sanctuary." (First Solicitation at 1–2, Hr'g Ex. C–3.) This form also included the option of donating up to $37.65 to purchase up to five Christmas stockings, which the accompanying four-page letter described as:

> [hanging] on the entrance way to their [dogs] yards, and twice a day their caretaker gives each dog a treat from his own stocking!
>
> You should see their eyes darting back and forth between the stocking and their caretaker! They know! And they will know . . . thanks to your Christmas Love Stocking . . . that they are loved.
>
> You can give this gift to as many dogs or cats as you like. And this year the stockings are huge again . . .
>
> . . . with over two dozen treats in each one!

(First Solicitation at 6, Hr'g Ex. C–3. (all ellipses in original).)

**4.** 10 P.S. § 162.13(c). Section 13(c) states:

> **(c) Notice on printed solicitation.**—On every printed solicitation or written confirmation, receipt and reminder of a contribution, the following statement must be conspicuously printed verbatim:
>
> The official registration and financial information of (insert the legal name of the charity as registered with the department) may be obtained from the Pennsylvania Department of State by calling toll free, within Pennsylvania, 1(800) 000–0000. Registration does not imply endorsement.

10 P.S. § 162.13(c). We note that the phone number listed in Section 13(c) does not

The Bureau received an additional solicitation on September 5, 2001, sent to an individual residing in Furlong, Pennsylvania and dated August 1, 2001 (Second Solicitation).[5] The Second Solicitation also stated an address of "PO Box 9, Glendale, CA 91209" and lacked the statement required by Section 13(c). (Second Solicitation, Examiner Hr'g Tr., Ex. C–3.)

On July 3, 2001, after DELTA had sent the First Solicitation, the Bureau informed DELTA that it violated the Act by failing to include the disclosure statement required by Section 13(c). The Bureau also informed DELTA that its solicitation did not comply with Section 13(b)(1) of the Act[6] because Section 13(b)(1) requires a charitable organization to disclose its location in its solicitations and, in the Bureau's opinion, "Post Office Box 9, Glendale, CA, is not considered a location." (Letter from Steven Ulrich, Special Investigator for the Bureau, to Leo Grillo, President of DELTA (July 3, 2001) at 1.) DELTA replied and raised issues regarding the constitutionality of the Act's requirements, similar to the arguments it raises before this Court. The Bureau replied to DELTA, acknowledging DELTA's concerns but stating that DELTA was still required to comply with the Act by disclosing its "physical location." The Bureau requested DELTA to reply within two weeks indicating that it understood the Act's requirements as described by the Bureau and would comply, or otherwise stop soliciting within the Commonwealth. The Bureau indicated that, if DELTA continued to soli-

appear to be a working number. It is unclear whether the Bureau requires inclusion of this non-working number in the disclosure statement or another number not provided by the Act.

5. The Second Solicitation contained a card headlined "Save animals AND have more money to spend NOW!" (Second Solicitation at 1, Hr'g Ex. C–3.) The Second Solicitation comprises a six-page letter recounting anecdotes relating to DELTA's work rescuing abandoned animals. This letter also apparently encourages potential donors to give money immediately rather than leave a bequest in a will, describing anecdotes in which donors attempted to leave bequests to DELTA, but were frustrated by the vagaries of the judicial system. For example:

> Another estate I was involved in was when one of our supporters owned nothing ... absolutely nothing. She rented a small apartment and rented her furniture. But she had a savings account that she spent her whole life scrimping for. It was an even $5,000.
> Upon her death, she willed the entire $5,000 ... **her whole life's savings** ... to our animals.
> *After a year in probate, we got a check for $23.29!*
> But we got a letter with it. It explained the reason for the small check ...
> ... *the lady left us $5,000, but the lawyers got $4,995 awarded by the judge in legal fees.* The reason, they explained, that the amount was $23.29 was because the $5,000 had collected a little interest in the weeks following the order so they gave us that interest with our $5!
> This is our court system at work! *I say NUTS to them all! (I cleaned it up for you!)*

(Second Solicitation at 7, Hr'g Ex. C–3 (all ellipses and emphases in original).)

6. 10 P.S. § 162.13(b)(1). Section 13(b)(1) states:

> **(b) Solicitation disclosures.**—A charitable organization soliciting in this Commonwealth shall include all of the following disclosures at the point of solicitation:
> (1) Its legal name as registered with the department and location and, if different, the legal name and address of the charitable organization as registered with the department on whose behalf the solicitation is being conducted. Any use of a project or program name in a solicitation must be immediately followed by a disclosure of the legal name of the charitable organization as registered.

10 P.S. § 162.13(b)(1).

cit in the Commonwealth in violation of the Act, the case would be sent to a prosecuting attorney. The record contains no response from DELTA.

On August 14, 2002, the Secretary promulgated an order "directing [DELTA] to cease and desist solicitations in Pennsylvania until such time as [DELTA] include[d] the required disclosure statement and its address *as registered* with the Department on its solicitation materials." (Cease Order, August 14, 2002. (emphasis added).)

On June 18, 2004, the Bureau came into possession of a third solicitation (Third Solicitation), which was also sent to an individual in Furlong, Pennsylvania.[7] The Third Solicitation included DELTA's address as "PO Box 9, Glendale, CA 91209," but lacked the disclosure statement required by Section 13(c).

On September 1, 2006 the Bureau issued an Order to Show Cause (OSC) against DELTA, alleging that DELTA, had violated Section 13(c) by failing to include the required disclosure statement in its solicitations, and had violated Section 13(b) of the Act because its solicitations "used a post office box rather than [DELTA's] location." (OSC Factual Allegations ¶ 8.) The OSC charged DELTA with violating Section 15(a)(1) of the Act[8] by soliciting in Pennsylvania while not properly registered in violation of Section 5(a) of the Act,[9] by soliciting contributions in Pennsylvania while subject to the Cease Order in violation of Section 17(a)(1) of the Act,[10] by failing to include the disclosure statement mandated by Section 13(c), and by failing to include its physical location in its solicitations as required by Section 13(b)(1).

A hearing was held before a hearing examiner on November 15, 2006. The Bureau presented the testimony of Mr. Ulrich and introduced the First, Second and

---

7. The Third Solicitation is similar to the First Solicitation, but invites donations for a "2003 Christmas Love Stocking." (Third Solicitation at 6, Hr'g Ex. C–4.)

8. 10 P.S. § 162.15(a)(1). Section 15(a)(1) states:

> (a) **General rule.**—Regardless of a person's intent or the lack of injury, the following acts and practices are prohibited in the planning, conduct or execution of any solicitation or charitable sales promotion:
>
> (1) Operating in violation of, or failing to comply with, any of the requirements of this act, regulations of the department or an order of the secretary, or soliciting contributions after registration with the department has expired or has been suspended or revoked or soliciting contributions prior to the solicitation notice and contract having been approved by the department.
>
> 10 P.S. § 162.15(a)(1).

9. 10 P.S. § 162.5(a). Section 5(a) states:

> (a) **Registration and approval required.**—A charitable organization, unless exempted from registration requirements pursuant to section 6, shall file a registration statement with the department. This statement must be refiled annually within 135 days after the close of its fiscal year in which the charitable organization was engaged in solicitation activities. The department shall review the statement pursuant to subsection (r). No charitable organization shall solicit contributions or have contributions solicited in its behalf before approval of its registration statement by the department.
>
> 10 P.S. § 162.5(a).

10. 10 P.S. § 162.17(a)(1). Section 17(a)(1) states:

> (a) GENERAL RULE.—The secretary may refuse to register or revoke or suspend the registration of any charitable organization, professional fundraising counsel or professional solicitor whenever he finds that a charitable organization, professional fundraising counsel or professional solicitor, or an agent, servant or employee thereof:
>
> (1) Has violated or is operating in violation of any of the provisions of this act, the regulations of the department, or an order issued by the secretary.
>
> 10 P.S. § 162.17(a)(1).

Third Solicitations into evidence. DELTA did not present testimony, but did cross-examine Mr. Ulrich and introduced correspondence between DELTA and the Bureau into evidence. The hearing examiner compiled the evidence into a record, which was submitted to the Secretary for determination.

■ The Secretary reviewed the record and issued the A & O concluding that DELTA "is subject to sanctions under section 17(a)(1) and 15(a)(1) of the [Act] for soliciting charitable contributions in Pennsylvania in violation of [the Cease Order]." (A & O, Conclusions of Law (COL) ¶ 3.) The Secretary also concluded that DELTA violated Section 13(c) and (b)(1) by failing to include the disclosure statement and DELTA's location. (COL ¶¶ 4–5.) Finally, the Secretary concluded that DELTA violated the Act by soliciting without a current registration, in violation of Section 5(a). DELTA now appeals to this Court.[11]

On appeal to this Court, DELTA argues that: (1) various sections of the Act which the Secretary found DELTA to have violated are unconstitutional; (2) the Secretary's order that DELTA cease and desist from soliciting contributions in the Commonwealth until DELTA complied with Section 13(b)(1) and Section 13(c) was unconstitutional; (3) DELTA was denied due process of law; (4) the Secretary's findings of fact are not supported by substantial evidence; and (5) the Bureau is estopped from enforcing the Act against DELTA.

DELTA first argues that various sections of the Act, which the Secretary found DELTA to have violated, are unconstitutional. DELTA argues that: (1) the requirement in Section 13(c) of the Act that charitable solicitations contain a disclosure statement violates the First and Fourteenth Amendments to the United States Constitution; (2) the requirement of Section 13(b)(1) of the Act that solicitations disclose a charitable organization's location violates the First and Fourteenth Amendments of the United States Constitution; (3) Section 13(b)(1) of the Act is unconstitutionally vague; and (4) Sections 5(a) and 15(a)(1) of the Act are unconstitutional prior restraints on speech.

DELTA argues that its solicitations are a form of protected speech under the First Amendment and, because Section 13(c) requires it to make the Disclosure Statement, which DELTA would not otherwise make, Section 13(c) violates DELTA's right to free speech. For the following reasons, we disagree.

■ As a preliminary matter, we note that DELTA is correct that its solicitations are protected speech under the First Amendment. The United States Supreme Court has held that charitable solicitation is speech that is fully protected by the First Amendment. *Riley v. National Federation of the Blind,* 487 U.S. 781, 788–89, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Restrictions on such protected speech must be narrowly tailored to protect substantial government interests and must not be unduly burdensome. *Riley,* 487 U.S. at 788, 792, 798, 108 S.Ct. 2667.

■ Section 13(c) requires that solicitations contain a statement that:

> The official registration and financial information of (insert the legal name of the charity as registered with the department) may be obtained from the

11. Our review "is limited to a determination of whether constitutional rights were violated, and whether the decision is in accordance with law and supported by substantial evidence." *Watkins v. State Board of Dentistry,* 740 A.2d 760, 763 n. 4 (Pa.Cmwlth.1999).

Pennsylvania Department of State by calling toll free, within Pennsylvania, 1(800) 000–0000. Registration does not imply endorsement.

10 P.S. § 162.13(c). The Bureau argues that this statement is narrowly tailored to inform the public and prevent fraud. The prevention of fraud is a substantial state interest that can support a restriction on charitable solicitations. *Schaumburg*, 444 U.S. at 637–38, 100 S.Ct. 826.

DELTA, however, argues that Section 13(c)'s disclosure statement is a burdensome and ineffective way to prevent fraud and inform the public about a given charitable organization. The disclosure statement is burdensome because DELTA uses a single mailing for its solicitations nationwide, and it would be expensive to tailor a different mailing for each state. DELTA argues that the disclosure statement is ineffective to prevent fraud because it puts the burden of investigating and verifying charities on the citizens of the Commonwealth rather than on the Commonwealth itself. Moreover, DELTA argues that there is no allegation that it is engaged in fraudulent activity. DELTA asserts that the Commonwealth could provide information to its citizens regarding how to verify charitable organizations rather than requiring legitimate organizations to provide the information. Finally, DELTA argues that, in *Telco Communications, Inc. v. Carbaugh (Telco I)*, 700 F.Supp. 294 (E.D.Va.1988) *aff'd in part, rev'd in part, remanded by Telco Communications, Inc. v. Carbaugh (Telco II)*, 885 F.2d 1225 (4th Cir.1989), upon which this Court relied in *Commonwealth ex rel. Preate v. Watson & Hughey Co.*, 128 Pa.Cmwlth. 484, 563 A.2d 1276, 1280 (1989), the Federal district court held unconstitutional mandatory disclosure statements on the grounds that "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Telco I*, 700

F.Supp. at 297 (quoting *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. at 782, 108 S.Ct. 2667).

In order to determine whether Section 13(c)'s disclosure statement is narrowly tailored to achieve this goal and whether the disclosure statement is unduly burdensome, it is useful to examine decisions of the United States Supreme Court regarding restrictions on charitable solicitation. The Supreme Court, in *Schaumburg, Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and *Riley*, laid out high standards that limitations on charitable solicitations must meet in order to pass constitutional muster. Nonetheless, as we shall discuss below, at least one Federal appellate court case shows that it is possible for some regulations of charitable speech to meet this high standard.

In *Schaumburg*, the Court considered a municipal ordinance that required organizations soliciting contributions door-to-door to have a permit. *Schaumburg*, 444 U.S. at 622–23, 100 S.Ct. 826. In order to obtain a permit, an organization had to prove that at least 75% of the proceeds of the door-to-door solicitations would be directly used for the organization's charitable purpose. *Id.* at 624, 100 S.Ct. 826. The Village of Schaumburg (Village) advanced as substantial governmental interests backing its regulation the interests of "protecting the public from fraud, crime and undue annoyance." *Id.* at 636, 100 S.Ct. 826. The Federal Court held that the regulation was not narrowly tailored because it inaccurately presumed that any organization "using more than 25 percent of its receipts on fundraising, salaries, and overhead is not a charitable, but a commercial, for-profit enterprise and that to permit it to represent itself as a charity is fraudulent." *Id.* The Court found this pre-

sumption to be overbroad, because advocacy, research, and public education can often be tied into charitable solicitation. *Id.* The Court held that the Village could more effectively further its substantial interest in combating fraud through means that would not infringe on charities' free speech rights, such as direct penal prohibitions on fraudulent conduct or financial reporting requirements. *Id.* at 637–38, 100 S.Ct. 826.

In *Munson,* the Court considered a Maryland state statute, similar to the one in *Schaumburg,* that prohibited charitable organizations from paying professional, for-profit fundraising companies more than 25% of the money raised by the fundraising company. *Munson,* 467 U.S. at 950, 104 S.Ct. 2839. The statute provided that the 25% provision could be waived "whenever it would effectively prevent the charitable organization from raising contributions." *Id.* at 953, 104 S.Ct. 2839. Again, the Court found the statute to be overbroad because it assumed a connection between high solicitation costs and fraud. *Id.* at 966–67, 104 S.Ct. 2839. The Court also found that the statute was as likely to obstruct high cost solicitations that furthered a charity's goals as it was to prevent fraud. *Id.* at 967, 104 S.Ct. 2839. In addition, the Court found fault with elements of the statute that appeared to be a prior restraint on charitable solicitation, such as the requirement that contracts between charitable organizations and professional fundraisers be filed with the Maryland Secretary of State, or that the Maryland Secretary of State approve professional fundraisers' registration applications after verifying that the applications conformed to the statute's requirements. *Id.* at 968–69, 104 S.Ct. 2839.

In *Riley,* the Court considered a North Carolina statute that prohibited unreasonable fees as described in a three-tier schedule:

> A fee up to 20% of the gross receipts collected is deemed reasonable. If the fee retained is between 20% and 35%, the Act deems it unreasonable upon a showing that the solicitation at issue did not involve the "dissemination of information, discussion, or advocacy relating to public issues as directed by the [charitable organization] which is to benefit from the solicitation." Finally, a fee exceeding 35% is presumed unreasonable, but the fundraiser may rebut the presumption by showing that the amount of the fee was necessary either (1) because the solicitation involved the dissemination of information or advocacy on public issues directed by the charity, or (2) because otherwise the charity's ability to raise money or communicate would be significantly diminished.

*Riley,* 487 U.S. at 784–86, 108 S.Ct. 2667. Rather than argue the prevention of fraud as the substantial interest backing its statutes, the state argued that its interest was in ensuring that charities received as much money as possible and guaranteeing that charities were not charged unreasonable fees. *Id.* at 789–90, 108 S.Ct. 2667. The Court found that these interests were not sufficient to support a regulation infringing on protected speech. *Id.* at 791–92, 108 S.Ct. 2667. The Court additionally considered whether the statute was narrowly tailored to promote the prevention of fraud, and determined that it was not. *Id.* at 792, 108 S.Ct. 2667. The Court stated that, as in *Munson,* fraud could not be legislatively inferred from just looking at the percentage of gross receipts that went to pay a fundraiser. *Id.* at 793, 108 S.Ct. 2667. The Court also faulted the statute for putting the burden on a fundraiser to justify fees over 35%. *Id.*

Also challenged in *Riley* was a disclosure requirement that a professional fundraiser disclose "the average percentage of gross receipts actually turned over to charities by the fundraiser for all charitable solicitations conducted in North Carolina within the previous 12 months." *Id.* at 786, 108 S.Ct. 2667. Regarding this provision, the Court stated, "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech." *Id.* at 795, 108 S.Ct. 2667. North Carolina stated that its substantial interest supporting this provision was "the importance of informing donors how the money they contribute is spent in order to dispel the alleged misperception that the money they give to professional fundraisers goes in greater-than-actual proportion to benefit charity." *Id.* at 798, 108 S.Ct. 2667. The Court noted that this interest was not substantial enough to support the infringement on protected speech. *Id.* The Court also noted that other, unchallenged provisions, such as the requirement that professional fundraisers "disclose their professional status to potential donors" would put the public on notice that not all of the money they donate would go to the charitable organization, and that potential donors could then ask what percentage would go to the charity. *Id.* at 799, 108 S.Ct. 2667.

While *Schaumburg, Munson* and *Riley* set a high bar, the opinion of the Fourth Circuit Court of Appeals in *Telco II* gives an example of a regulation on charitable speech that may leap this hurdle. Although not binding on this Court, the Fourth Circuit Court of Appeals, in *Telco II,* examined a Virginia statute very similar to Section 13(c) and found that it was narrowly tailored to the state's interest in preventing fraud. *Telco II,* 885 F.2d at

1231–32. The court stated its reasoning in determining the statute to be narrowly tailored:

> The statute requires that the disclosure be made in writing to prospective contributors. With respect to written solicitations, a brief notation of this nature is not a burdensome requirement.... Finally, while Telco suggests the state could accomplish its purposes by publishing the information itself, the requirement that the disclosure be made to charitable contributors is tailored to that group which would most desire the information and make an informed decision on the basis of it.

*Id.* at 1232.

This Court finds the reasoning of the Fourth Circuit Court of Appeals in *Telco II* convincing. While the Supreme Court in *Schaumburg, Munson,* and *Riley* has set a high bar, Section 13(c)'s required statement is much more narrowly tailored to the Commonwealth's interest in preventing fraud than were the provisions in those cases. Unlike the required statement in *Riley,* Section 13(c) does not rely on any assumption about the validity of high fees, but only requires a neutral statement that its financial information is on record with the Bureau. As the Commonwealth points out, this is more similar to a requirement the Supreme Court noted without disapproval in *Riley,* that "an unchallenged portion of the disclosure law requires professional fundraisers to disclose their professional status to potential donors, thereby giving notice that at least a portion of the money contributed will be retained." *Riley,* 487 U.S. at 799, 108 S.Ct. 2667. Therefore, this Court determines that the disclosure statement mandated by Section 13(c) does not violate DELTA's right to free speech under the First Amendment.[12]

■ Next, DELTA argues that the Bureau's interpretation of Section 13(b)(1) to require a charity to disclose its street address, rather than its broader geographical location, is an unconstitutional application of Section 13(b)(1). DELTA argues that applying Section 13(b)(1) in this manner is burdensome to DELTA because it would not otherwise disclose this information and this requirement is not narrowly tailored to the Bureau's stated purpose of preventing fraud. Section 13(b)(1) provides that:

> **(b) Solicitation disclosures.**—A charitable organization soliciting in this Commonwealth shall include all of the following disclosures at the point of solicitation:
>
> > (1) Its legal name as registered with the department and *location* and, if different, the legal name and address of the charitable organization as registered with the department on whose behalf the solicitation is being conducted. Any use of a project or program name in a solicitation must be immediately followed by a disclosure of the legal name of the charitable organization as registered.

10 P.S. § 162.13(b)(1) (italicized emphasis added). The Bureau interprets the term "location" in Section 13(b)(1) to mean a charitable organization's street address (as opposed to its mailing address). The Bureau alleges that disclosure of a charity's street address is necessary to help prevent fraud because verifying a charity's activities without knowing its address would be more difficult.

This Court does not disagree that the Bureau's interpretation of the term "location" in the Act to mean "street address" is a reasonable interpretation of the Act and a salutary measure to prevent fraud by allowing the verification of a charity's activities. However, under the circumstances of this particular case, this Court does not believe that the Bureau's prosecution of DELTA for violating Section 13(b)(1) can be upheld. The record in this matter reflects that the Bureau has sent a number of contradictory signals to DELTA regarding exactly what was required of it with regard to the address listed on DELTA's solicitations. For example, the Bureau made no objection when DELTA submitted its application for registration. Section 5 of the Act, 10 P.S. § 162.5, requires a charitable organization registering with the Bureau to include, along with other information, the organization's principal address. When DELTA registered with the Bureau, DELTA provided the same mailing address on its registration that it provided on its solicitations: P.O. Box 9, Glendale, CA 91209. (Charitable Organization Registration Statement—Form BCO–10, July 7, 2000.) At no time did the Bureau object that this registration was inadequate because DELTA listed a mailing address rather than a street ad-

---

**12.** For the first time in its Reply Brief, DELTA raises the argument that Section 13(c) is unconstitutionally vague because Section 13(c) is unclear as to whether unregistered charities must include Section 13(c)'s disclosure statement. This argument appears to be made as a counter-argument to the Bureau's argument, discussed below, regarding the estoppel issue, that Section 13(c) is not intended to apply to unregistered charities. Insofar as this argument is a facial attack on Section 13(c), we disagree. First, because this argument was not raised as a challenge to Section 13(c) in DELTA's main brief, it is waived. *Muretic v. Workers' Compensation Appeal Board (Department of Labor & Industry)*, 934 A.2d 752, 758 (Pa.Cmwlth.2007) (issues not raised in the statement of questions or argument section of a party's brief are waived). Moreover, we do not agree that Section 13(c) is unconstitutionally vague. As discussed below, Section 13(c)'s plain language clearly implies that it can logically apply only to registered charities.

dress. Yet one year later, the Bureau sent DELTA a letter stating that DELTA violated Section 13(b)(1) for not including its street address on its solicitations. It is not reasonable to assume that DELTA should have known that Section 13(b)(1)'s use of the term "location" required DELTA to include its street address when the Bureau allowed DELTA to register using its Post Office Box address as its principal address under Section 5. The confusion is only deepened by the Bureau's Cease Order. The Cease Order directed DELTA "to cease and desist solicitations in Pennsylvania until such time as [DELTA] include[d] the required disclosure statement and its address *as registered with the Department* on its solicitation materials." (Cease Order, August 14, 2002 (emphasis added).) Although at the time of the Cease Order, DELTA was not registered with the Bureau, the address that it had previously registered with the Bureau was the same address that appeared on its solicitations. Therefore, the Cease Order, which was apparently intended to compel DELTA to comply with the Act, directed DELTA to engage in the behavior which the Board now claims is a violation of the Act. Under these circumstances, we cannot uphold the citation of DELTA for violating Section 13(b)(1) of the Act by not including its street address on its solicitations.[13]

■ Next, we address DELTA's argument that Sections 5(a) and 15(a)(1) of the Act are unconstitutional prior restraints on speech. Section 5(a) provides, *inter alia,* that a charitable organization may not solicit contributions before its registration is approved. 10 P.S. § 162.5. Section 15(a)(1) prohibits a charitable organization from failing to comply with the Act's provisions and from soliciting contributions after its registration has been suspended or revoked. 10 P.S. § 162.15(a)(1). DELTA argues that this Court's holding in *Watson* prohibits the Bureau from applying Sections 5(a) and 15(a)(1) to prohibit DELTA from soliciting contributions in the Commonwealth until it complies with the Act's registration requirements. We disagree.

In *Watson,* this Court considered an action brought by the Commonwealth, through its Attorney General, under the Unfair Trade Practices and Consumer Protection Law[14] and the predecessor to the Act, the Charitable Organization Reform Act,[15] against certain companies and individuals (collectively Watson) who were soliciting contributions on behalf of charitable organizations. *Watson,* 563 A.2d at 1278. Part of the relief the Attorney General sought was a permanent injunction to prohibit Watson from soliciting contributions in the Commonwealth "based upon past alleged misrepresentations or omissions of registration." *Id.* at 1280. This Court held that such a permanent injunction would be "unconstitutional as an impermissible prior restraint" on speech. *Id.* This Court's rationale for that holding was based on language from *Telco I* indicating that a permanent prohibition on future solicitations is not a narrowly-tailored remedy for past misconduct:

---

**13.** Due to our holding on this issue, this Court does not reach the constitutional challenges to Section 13(b)(1) raised by DELTA. Indeed, our holding on this issue is specific to the facts of this case and should not be read as holding that the Bureau may not interpret Section 13(b)(1) to require a charitable organization to disclose its street address on the organization's solicitations.

**14.** Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1–201–9.3.

**15.** Act of April 30, 1986, P.L. 107, *as amended, formerly* 10 P.S. §§ 161.1–161.19, repealed by the Act.

In this case, one of the asserted purposes of the suspension and revocation provisions is to punish misrepresentations made in the solicitation of charitable contributions and to punish non-compliance with certain other aspects of the charitable solicitation law. The provision, however, goes well beyond punishing specific instances of past misconduct and prevents all future charitable solicitation, all future protected speech, in the Commonwealth of Virginia. Nor has the Commonwealth met the "heavy burden" placed on them to justify the restraint. Certainly there are less stringent measures that would be adequate to achieve the state's goals.

*Telco I,* 700 F.Supp. at 300 (quoted in *Watson,* 563 A.2d at 1280).

This Court's holding in *Watson* does not prevent the Bureau from prohibiting a charity from soliciting contributions while unregistered or for censuring a charity for such solicitations. In *Watson,* this Court declined to issue a *permanent* injunction "based upon past alleged misrepresentations or omissions of registration." *Watson,* 563 A.2d at 1280. This Court did not state that the Commonwealth could not prosecute a charity after the fact for soliciting while unregistered. Likewise, this Court did not hold that the Commonwealth could not prohibit a charity from soliciting contributions until that charity brought its solicitations into compliance with the requirements of the Act. Moreover, the United States Supreme Court has indicated that states may require the licensing or registration of charitable organizations, so long as there is no undue delay between application for a license and granting of the license. *Riley,* 487 U.S. at 802, 108 S.Ct. 2667. The Act only requires registration, not licensing, and the Bureau must either approve a registration application within 10 working days or notify the charitable organization of the reason for non-approval, and give the organization the opportunity to request a hearing; otherwise the registration statement will be deemed approved. Section 5(r) of the Act, 10 P.S. § 162.5(r). Therefore, we reject DELTA's argument that Sections 5(a) and 15(a)(1) of the Act are unconstitutional for prohibiting solicitation by an unlicensed charitable organization.

■ Next, we address DELTA's argument that the Cease Order and, therefore, the Secretary's determination that DELTA violated the Cease Order, are invalid because the Cease Order directed DELTA to comply with Sections 13(b)(1) and 13(c), which, as discussed above, DELTA argues are unconstitutional. Because these provisions are unconstitutional, DELTA argues, the Cease Order is unconstitutional. As discussed above, with regard to Section 13(b)(1), the Cease Order directed DELTA to include in its solicitations the address registered with the Bureau. At the time DELTA sent out the Third Solicitation, DELTA was not registered with the Bureau as a charitable organization and, therefore, had no address registered with the Bureau. As previously discussed, this Court believes it is constitutional for the Commonwealth to require a charitable organization to register with the Bureau, and to disclose its location. In addition, as discussed above, Section 13(c)'s requirement that charitable solicitations contain the mandated disclosure statement is constitutional. Therefore, the Cease Order is valid with respect to its direction that DELTA comply with Section 13(c). As such, the Secretary's determination that DELTA failed to comply with the Cease Order, thereby violating Section 17(a)(1), is valid.

■ Next, DELTA argues that it was denied due process of law at its administrative hearing. DELTA argues that the

Bureau has repeatedly cited the prevention of fraud as the justification for the Act's restraints on the free speech rights of charitable organizations, but has offered no evidence that DELTA engaged in any fraudulent conduct. DELTA argues that, despite this lack of evidence, "there was a suggestion at the hearing below that the Bureau had suspected that [DELTA] and its President, Leo Grillo, were engaged in fraudulent conduct." (DELTA's Br. at 21.) DELTA argues that, while Mr. Ulrich stated that the Bureau had information in its investigative file regarding allegations of fraud against DELTA, the Bureau never shared this investigative file with DELTA. DELTA infers from these facts that the Bureau pursued DELTA on the pretext of technical violations of the Act because it was unable to prove the suspected fraud.

 DELTA cites little authority in support of its argument that it was denied due process at the administrative hearing, beyond correctly citing *Conestoga National Bank of Lancaster v. Patterson*, 442 Pa. 289, 294–95, 275 A.2d 6, 9 (1971), for the principle that administrative hearings are subject to the requirements of due process. It is unclear how, exactly, DELTA believes it was denied due process of law. As the Bureau correctly points out, the basic requirements of due process are "notice and an opportunity to be heard prior to an adjudication, affecting that person's rights." *Goetz v. Department of Environmental Resources*, 149 Pa.Cmwlth. 230, 613 A.2d 65, 67 (1992). DELTA received notice of the charged violations of the Act and had the opportunity to defend against them. If DELTA is arguing that the Bureau made allegations of fraud at the hearing that it did not support with any evidence, this argument is without merit. The "suggestion at the hearing below," cited by DELTA (DELTA's Br. at 21),

that DELTA or its president was engaged in fraudulent conduct was not elicited by the Bureau, but was in fact solicited by DELTA's questioning of Mr. Ulrich as to whether he had received information regarding such fraudulent conduct. (Hr'g Tr. at 41–46.) It is notable, in fact, that counsel for the Bureau objected to this line of questioning:

> Q [counsel for DELTA] Is there anything you [Mr. Ulrich] have ever seen since 1998 to the present that leads you to believe that Delta Rescue is committing fraud on the citizens of State [sic] of Pennsylvania?
>
> [counsel for the Bureau]: I'm going to object as to relevance. This has nothing to do with any of the allegations that were in the order to show cause. The allegations relate to solicitation and disclosure requirements. There is no allegation of fraud and I don't see a reason for this point of questioning.

(Hr'g Tr. at 41–42.) If DELTA is arguing that it should have been allowed to see the Bureau's investigative file due to the fact that the issue of fraud was raised, this argument is also without merit. As noted above, it was DELTA that raised the issue of fraud and, as the Bureau correctly points out, "discovery generally as provided by the Pennsylvania Rules of Civil Procedure in court proceedings is not made available in administrative proceedings." *Weinberg v. Insurance Department*, 41 Pa. Cmwlth. 319, 398 A.2d 1120, 1121 (1979). Finally, if DELTA is arguing that it was denied due process because the Board is only prosecuting DELTA for technical violations of the Act because the Board thinks DELTA committed fraud, but can't prove it, that argument is without merit as well. Administrative agencies have prosecutorial discretion in enforcement, which should not be judicially disturbed. *Commonwealth v. Sanico, Inc.*, 830 A.2d 621, 629 n.

14 (Pa.Cmwlth.2003). Therefore, DELTA's arguments that it was denied due process at the administrative hearing, such as those arguments are, are without merit.

■ DELTA next argues that the Secretary's findings of fact regarding whether the Solicitations were received by Commonwealth citizens, and the dates on which the Solicitations were received, are not supported by substantial evidence. DELTA argues that there is no direct testimony from any of the supposed recipients of the Solicitations and, therefore, no substantial evidence to support a finding that the Solicitations were actually received, or when they were received. We disagree.

As the Bureau points out in its brief, "[s]ubstantial evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Younkin v. Bureau of Professional & Occupational Affairs, State Real Estate Commission,* 774 A.2d 1281, 1286–87 (Pa.Cmwlth.2001). Additionally, a fact finder may reasonably infer necessary facts. *See D.N. v. Department of Public Welfare,* 127 Pa.Cmwlth. 580, 562 A.2d 433, 436 (1989) ("In determining whether substantial evidence exists to support a finding of fact this Court is to give to the party in whose favor the appealed decision was rendered . . . the benefit of all inferences that can logically and reasonably be drawn from the evidence."). Although much of the recipients' addresses on each solicitation is redacted,[16] it is clear that each solicitation was mailed to a Pennsylvania address. It is a fair and reasonable inference that each solicitation was properly delivered to its addressee by the U.S. Postal Service and not illegally intercepted. The Solicitations speak for themselves in this regard. We, therefore, disagree

with DELTA's argument that the Secretary's finding that the Solicitations were sent to Commonwealth residents is not supported by substantial evidence.

DELTA also argues that the record lacks substantial evidence to support the Secretary's finding regarding when DELTA sent the Solicitations. Again, we disagree. It is a fair and reasonable inference that the First and Third Solicitations, the 2000 and 2003 Christmas Love Stockings, were probably sent within a few months before December 25, 2000 and December 25, 2003, respectively. Likewise it is fair to assume that the Second Solicitation was sent sometime around its stated date of August 1, 2001. (Second Solicitation at 2, Hr'g Ex. C–3.)

■ Lastly, DELTA argues that the Bureau is estopped from enforcing any provisions of the Act against DELTA that DELTA was already violating prior to the Consent Agreement. Estoppel may be asserted against a Commonwealth agency when the following elements are present:

(1) misleading words, conduct or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and (3) the lack of a duty to inquire on the party asserting the estoppel.

*Milton S. Hershey Medical Center v. Medical Professional Liability Catastrophe Loss Fund,* 763 A.2d 945, 951 (Pa.Cmwlth. 2000). The Consent Agreement stated that DELTA's "last known business address, as on file with the Department of State is: P.O. Box 9, Glendale, CA 91209," and that the Board received evidence on February 10, 1999, December 9, 1998,

---

**16.** The first two lines of each address are redacted, leaving only the city, state and zip code on each solicitation.

June 8, 1998 and March 17, 1997 that DELTA "was soliciting charitable contributions in the Commonwealth." (Consent Agreement ¶¶ 4(a)-(b), (i), (m)-(n).) DELTA argues that its solicitations in 1997, 1998 and 1999 did not contain the disclosure statement required by Section 13(c) or DELTA's street address. Therefore, DELTA argues, the Bureau's silence as to these violations was misleading. Rather than cite DELTA for these violations, "the Bureau sat on their hands and collected $5,000 from [DELTA] presumably knowing that as soon as they registered and paid additional fees they would hit them with another cease and desist order for failing to comply with the disclosure and address requirements." (DELTA's Br. at 26.) DELTA also argues that it relied on the Bureau's silence by spending funds to send further solicitations into the Commonwealth, and that it was reasonable for DELTA to believe that if there were further deficiencies in DELTA's prior solicitations, the Bureau would have charged DELTA for such violations along with the other charges that formed the basis for the Consent Agreement. We disagree.

The Bureau is not estopped from enforcing provisions of the Act against DELTA simply because DELTA was violating these same provisions prior to the Consent Agreement and the Bureau did not charge DELTA with these violations. Essentially, DELTA asks this Court to hold that it has a vested right in violating Section 13(c) of the Act.[17] This argument is untenable. The Bureau's silence regarding Section 13(c) was not misleading. Section 13(c), by its language, appears to be intended to apply only to registered charities, given that it requires a charitable organization that solicits in Pennsylvania to include in its solicitation the following statement: "[t]he *official registration and financial information* of (insert legal name of the charity *as registered with the department*) may be obtained from the Pennsylvania Department of State." 10 P.S. § 162.13(c) (emphasis added). Moreover, as discussed above, Commonwealth agencies enjoy prosecutorial discretion. *Sanico,* 830 A.2d at 629 n. 14. Therefore, an agency's choice not to prosecute a given violation does not waive its ability to prosecute a similar violation in the future.

DELTA's arguments that it relied on the Bureau's failure to prosecute further violations, and that such reliance was reasonable, are likewise without merit. DELTA argues that it relied on the Bureau's alleged misrepresentation by spending money to send out further solicitations. As a registered charitable organization, DELTA had a duty to ensure its compliance with the Act, and it was not reasonable of DELTA to assume that its solicitations were not in violation of the Act merely because the Bureau had not previously charged it with such violations. Therefore, we conclude that the Bureau is not estopped from enforcing any provision of the Act against DELTA.

For the reasons discussed above, we reverse the Order of the Secretary insofar as it determines that DELTA violated Section 13(b)(1) of the Act. We vacate the Secretary's Order insofar as it levies a $3,000.00 administrative fine against DELTA. Rather than levying a fine based upon each violation of the Act, the Secretary levied the administrative fine based on each of the three Solicitations. (A & O at 13.) Because we reverse the Secretary's determination that DELTA violated Section 13(b)(1), we must remand this case to the Secretary to reconsider the appro-

17. As discussed above, we have determined that DELTA was not in violation of Section 13(b)(1) of the Act.

priate fine for each solicitation based on the determinations of violations this Court affirms.[18] We affirm the Secretary's Order in all other respects.

### ORDER

NOW, July 8, 2009, the Order of the Secretary of the Commonwealth in the above-captioned matter is hereby: (1) **REVERSED IN PART,** insofar as it determined that the Petitioner violated Section 13(b)(1) of the Act; (2) **VACATED IN PART** as to the amount of the administrative fine levied by the Secretary, and **REMANDED** to the Secretary for reconsideration of the amount of the fine in light of the violations upheld in this opinion; and (3) **AFFIRMED** in all other respects.

Jurisdiction relinquished.

---

**18.** Our remand for reconsideration of the appropriate amount of such fines does not necessarily imply that the Secretary must levy a lower administrative fine against each Solicitation. Each Solicitation still violated the Act and it is within the Secretary's discretion to levy a fine for such violations. "In the absence of bad faith, fraud, capricious action or abuse of power," this Court will not interfere with the Secretary's exercise of such discretion, so long as it is in accordance with the law. *Slawek v. State Board of Medical Education and Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991); *Zook v. State Board of Dentistry,* 683 A.2d 713, 715 (Pa.Cmwlth. 1996).