IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christy Sheidy and Rick Sheidy : 
t/d/b/a Another Chance 4 Horses, Inc., : 
                              Petitioners : 
                                  : 
                                  : 
            v.                    : 
                                  : 
                                  : 
Department of State,              : 
Bureau of Corporations and        : 
Charitable Organizations,         :   No. 189 C.D. 2015
                  Respondent      :   Submitted: November 20, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge[1]
          HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: May 18, 2016


          Christy Sheidy and Rick Sheidy (collectively, the Sheidys) t/d/b/a
Another Chance 4 Horses, Inc. (AC4H), pro se, petition this Court for review of the
Department of State's (Department) Secretary's (Secretary) January 6, 2015 Final
Adjudication and Order (Final Adjudication) sanctioning the Sheidys and AC4H for
violations of the Solicitation of Funds for Charitable Purposes Act (Act).[2]
Essentially, the sole issue for this Court's review is whether the Secretary's
determinations that AC4H failed to produce records and solicited contributions after
AC4H's registration expired, and after the Secretary served a cease and desist order
and that the Sheidys used charitable contributions to AC4H in violation of the Act,
are supported by substantial evidence.  After review, we affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt
became President Judge.

[2] Act of December 19, 1990, P.L. 1200, *as amended*, 10 P.S. §§ 162.1-162.23.

AC4H is a nonprofit corporation operating at 166 Station Road, Bernville, Pennsylvania for the purpose of rescuing, rehabilitating and placing abused and neglected horses. AC4H was properly registered with the Department's Bureau of Corporations and Charitable Organizations (Bureau) as a charitable organization from 2000 to November 10, 2012. Rick Sheidy is AC4H's president, Christy Sheidy is its secretary, and both are authorized signers on AC4H's accounts.

A January 11, 2012 letter from Bureau Special Investigator Drew Koser (Koser) addressed to Christy Sheidy's attention, stated that the Bureau was conducting a periodic review of AC4H's activities and, in order to complete its investigation, AC4H was required to supply specifically-designated organizational and financial information and documentation dating from January 1, 2009 within 30 days. Because Christy Sheidy supplied some documentation from 2009, but failed to produce any financial information for 2010 or 2011, the Bureau subpoenaed the documentation from AC4H, and the Sheidys' bank, as well as the PayPal accounts. AC4H's Bureau registration expired on November 10, 2012 and was not renewed.

As a result of the Bureau's investigation, on August 26, 2013, the Secretary sent AC4H an order, by certified and regular mail, to cease and desist from soliciting contributions until AC4H produced the previously-requested documentation, and AC4H again became duly registered with the Bureau or proved that the Act exempted or excluded it from registration. The order warned that AC4H may be subject to administrative fines.

After the Bureau learned that AC4H was still soliciting charitable donations in contravention of its order, on May 22, 2014, the Department issued a notice of formal charges and order to show cause why the Secretary should not sanction AC4H for violating Sections 12 and 15(a)(1) of the Act[3] for failing to make

---

[3] 10 P.S. §§ 162.12, 162.15(a)(1).

financial records available for the Bureau's inspection (Count I); violating Section 15(a)(1) of the Act for soliciting contributions in the absence of an approved registration (Count II); violating Section 15(a)(1) of the Act by soliciting contributions contrary to the Secretary's August 26, 2013 cease and desist order (Count III); and, violating Sections 13 and 21 of the Act[4] due to the Sheidys' failure to act in a fiduciary capacity relative to soliciting, collecting and expending charitable contributions in a manner consistent with AC4H's charitable purpose (Count IV).

AC4H filed an answer denying the allegations in the order to show cause (Answer),[5] specifically arguing relative to Count I (failure to supply documents) that despite Koser's knowledge that AC4H was undergoing a federal audit, he requested the records after they were confiscated and, thus, AC4H could not produce them. *See* Certified Record (C.R.) Item 3. In regard to Count II (soliciting contributions after November 10, 2012), AC4H asserted that since it filed a registration statement and an extension request on August 15, 2013 and, on December 17, 2013 the Internal

---

[4] 10 P.S. §§ 162.13, 162.21.

[5] The documents attached to AC4H's Answer were not part of the Bureau's certified record. In the Final Adjudication, the Secretary stated:

> [The Sheidys] did not appear at the hearing and thus did not offer any evidence. Any exhibits attached to the Answer were not admitted, as [the Sheidys] were not present to give testimony and seek admission of those exhibits into the record, as well as be cross-examined on the allegations contained therein.

Final Adj. at 9. In the Petition for Review, the Sheidys objected to the Secretary's failure to consider the documents tendered with the Answer, and requested a re-hearing because they were unable to attend the hearing and present their evidence. They also attached copies of the documents to their brief. "Only items which are part of the certified record may be considered by an appellate [c]ourt." *Kochan v. Dep't of Transp., Bureau of Driver Licensing*, 768 A.2d 1186, 1189 (Pa. Cmwlth. 2001). Merely appending the missing documents to the brief does not make them part of the record. *See Hempfling v. Unemployment Comp. Bd. of Review*, 850 A.2d 773 (Pa. Cmwlth. 2004). Thus, we are precluded from reviewing the documents attached to AC4H's Answer and the Sheidys' brief, and have not done so.

3

Revenue Service (IRS) deemed AC4H exempt from federal income tax, its registration was extended beyond November 10, 2012. *See* C.R. Item 3. With respect to Count III (soliciting contributions after August 26, 2013), AC4H contended that it did not receive the certified mailing of the order, and since it had sought a registration extension and the Bureau cashed its check for late fees, its "obligations to solicit had been fulfilled and [it was] not aware that was not or is not the case." C.R. Item 3 at 1. Finally, in defense of Count IV (personal use of funds), AC4H stated: "We continue to qualify after [f]ederal audit which reviewed our records. We have not used funds for personal use." C.R. Item 3 at 2.

A hearing was held before a hearing examiner on September 12, 2014; however, the Sheidys did not attend "due to unforeseen circumstances and mechanical failure[.]"[6] Pet. for Review at 1. By January 6, 2015 Final Adjudication, the Secretary concluded that the Bureau proved all of its charges against the Sheidys t/d/b/a AC4H by a preponderance of the evidence. Thus, the Secretary ordered AC4H to cease and desist from soliciting contributions, fined AC4H $5,000.00, suspended AC4H's registration for two years, and added that the Sheidys t/d/b/a AC4H may be subject to additional penalties, including fines of up to $1,000.00 per violation and $100.00 for each day their violations continue. The Sheidys t/d/b/a AC4H appealed to this Court.[7]

Initially, on March 5, 2015, this Court ordered AC4H to have counsel enter an appearance on the corporation's behalf. On April 21, 2015, this Court dismissed AC4H's appeal for failure to comply with the March 5, 2015 order. The

---

[6] Likewise, no one appeared on AC4H's behalf.

[7] This Court's review of the Department Secretary's Final Adjudication "is limited to a determination of whether constitutional rights were violated, and whether the decision is in accordance with law and supported by substantial evidence." *D.E.L.T.A. Rescue v. Bureau of Charitable Orgs.*, 979 A.2d 415, 421 n.11 (Pa. Cmwlth. 2009) (quoting *Watkins v. State Bd. of Dentistry*, 740 A.2d 760, 763 n.4 (Pa. Cmwlth. 1999)).

4

appeal was ordered to proceed with the Sheidys as the only petitioners. Since AC4H was precluded from this appeal, the sole issue for this Court's consideration is whether the Sheidys improperly used charitable contributions made to AC4H. In regard to that issue, the Sheidys argue that substantial evidence does not support the Secretary's determination that they personally used charitable contributions made to AC4H in violation of the Act. We disagree.

Section 5(s) of the Act requires that "[a] charitable organization shall maintain and administer all contributions raised on its behalf through an account in the name of the charitable organization and under its sole control." 10 P.S. § 162.5(s). Section 21 of the Act prescribes: "Every person soliciting, collecting or expending contributions for charitable purposes and every officer, director, trustee and employee of any such person concerned with the solicitation, collection or expenditure of such contribution **shall be deemed to be a fiduciary and acting in a fiduciary capacity**." 10 P.S. § 162.21 (emphasis added).

Section 13(a) of the Act further states: "A charitable organization may only solicit contributions for the charitable purpose expressed in solicitation for contributions or the registration statement of the charitable organization and **may only apply contributions in a manner substantially consistent with that purpose**." 10 P.S. § 162.13(a) (emphasis added). Section 3 of the Act defines "[c]haritable purpose," in relevant part, as "[a]ny benevolent, educational, philanthropic, humane, scientific, patriotic, social welfare or advocacy, public health, environmental conservation, civic or other eleemosynary objective[.]" 10 P.S. § 162.3.

At the hearing, the hearing examiner admitted into evidence a copy of AC4H's 2010 IRS Form 990,[8] which states that AC4H's mission is "to give equines a

_____

[8] An IRS Form 990 is a Return of Organization Exempt From Income Tax.

much needed 'Another Chance.' We do all aspects of rescue – abuse, neglect, owner surrender, cruelty, auction purchase and slaughter for human consumption. [We] quarantine, rehabilitate, evaluate, train and place horses in loving homes. We are very active with education and community involvement." *See* Notes of Testimony (N.T.) Ex. C-5 at 2.

AC4H's IRS Form 990 reflects that president Rick Sheidy and secretary Christy Sheidy received no compensation from AC4H during the 2010 tax year. *See* N.T. Ex. C-5 at 7. However, also admitted into evidence at the hearing were copies of AC4H's account statements from National Penn Bank, showing that Check # 2549 was made out to Christy Sheidy on February 1, 2012 in the amount of $750.00, and checks made out to Rick Sheidy totaling $21,700.00 as follows:[9]

Check # 2334 – March 16, 2010 – $500.00 (50 hours hauling)

Check # 2336 – March 18, 2010 – $2,800.00

Check # 2346 – March 23, 2010 – $100.00 (hauling)

Check # 2612 – April 14, 2010 – $350.00

Check # 2625 – April 23, 2010 – $600.00

Check # 2653 – May 15, 2010 – $650.00

Check # 2682 – June 7, 2010 – $1,200.00

Check # 2730 – June 28, 2010 – $2,000.00

Check # 2782 – August 8, 2010 – $2,450.00 (transport fees)

Check # 2800 – August 17, 2010 – $625.00

Check # 2822 – August 31, 2010 – $2,205.00 (transport)

Check # 2838 – September 7, 2010 – $1,025.00

Check # 2848 – September 17, 2010 – $775.00

---

[9] At the Bureau's request, the hearing examiner sealed AC4H's National Penn Bank records and the Sheidys' bank records due to the sensitive financial information contained therein.

Check # 2867 – September 20, 2010 – $775.00

Check # 2882 – October 1, 2010 – $850.00

Check # 2890 – October 6, 2010 – $550.00

Check # 3029 – October 19, 2010 – $425.00

Check # 3037 – October 28, 2010 – $1,100.00

Check # 3055 – November 9, 2010 – $850.00

Check # 3137 – November 30, 2010 – $775.00

Check # 3103 – December 21, 2010 – $925.00

Check # 3158 – December 17, 2010 – $170.00

N.T. Ex. 6.

Koser testified that all charitable contributions made to AC4H are required by law to be deposited into an account in AC4H's name and under its sole control. He reported that during his August 23, 2010 interview of Christy Sheidy, she informed him that Rick Sheidy received approximately $15,000.00 per year from AC4H for his labor. Koser stated that he also learned from Christy Sheidy that although AC4H does not own real property, the Sheidys' 2009 property tax payments were made on April 14, 2010 from AC4H's account to the Berks County Tax Claim Bureau for $2,512.94 and to tax collector John H. Ruth for $494.35.[10] *See* N.T. Ex. C-10. In addition, Koser explained that the Sheidys made their home's $731.55 mortgage payment from AC4H's account on June 4, 2010.[11] *See* N.T. Ex. C-7.

Koser further related that AC4H's bank records also reveal that five payments of $289.93 were made from AC4H's account to Westgate Resorts in Orlando, Florida on June 16, September 16, October 18, November 16 and December

---

[10] Christy Sheidy denied that the Sheidys used AC4H funds to pay their home's property taxes until Koser confronted her with the cancelled checks.

[11] Christy Sheidy also denied that the Sheidys used AC4H funds to pay their mortgage until Koser showed her AC4H's June 2010 statement.

7

17, 2010, respectively. *See* N.T. Ex. C-8. He recalled Christy Sheidy's explanation that AC4H purchased a timeshare in order to raffle it off or rent it out to generate income. Koser testified that Christy Sheidy admitted that their family used the timeshare for a partial week just after it was purchased. Koser recollected that although Christy Sheidy denied any other personal use, after he showed her the AC4H account debit for airfare, she recalled that the family used the timeshare a second time.

Based upon the Sheidys' bank records admitted into the record at the hearing, Koser described that there was a June 17, 2009 deposit of $560.00 consisting of seven checks made payable to AC4H, and there was a July 20, 2009 deposit of $497.00 consisting of two checks made payable to AC4H. *See* N.T. Ex C-9.

In their Answer, the Sheidys stated: "We continue to qualify after [f]ederal audit which reviewed our records. We have not used funds for personal use." Answer at 2. On appeal, the Sheidys contend that the payments made to the independent contractors for horse transportation and for expense reimbursement were consistent with AC4H's purpose. They also assert that payment of their property taxes was "payment of [r]ents," since AC4H rents an office at the Sheidys' home to store records and horse equipment. Sheidy Br. at 13. Finally, they declare that since their family stayed in the timeshare "while transporting horses to Florida[,] as well as conducting business for [AC4H –] checking on horses that were adopted to private families as well as rescue organizations[,]" they did not violate the Act. *Id.*

Section 2 of the Act makes its purpose clear:

> It is the intention of the General Assembly that this [A]ct shall not merely require proper registration of charitable organizations, professional fundraisers and professional solicitors, **but shall protect the citizens of this Commonwealth by requiring full public disclosure of** the identity of persons who solicit contributions from the public, the purposes for which such contributions are

8

> solicited and **the manner in which [contributions] are actually used**, by promoting consumer education about charitable concerns, by providing civil and criminal penalties for deception and dishonest statements and conduct in the solicitation and reporting of contributions for or in the name of charitable purposes and by publicizing matters relating to fraud, deception and misrepresentation perpetrated in the name of charity.

10 P.S. § 162.2 (emphasis added).

As the Bureau acknowledges, although horse hauling and transport "may be related to [AC4H's] charitable purpose of equine rescue, many of the memoranda sections of the other checks are blank, are illegible and/or appear unrelated to [AC4H] or its charitable purpose." Bureau Br. at 25. Certainly, if the Sheidys wished to establish that AC4H's 2009 and 2010 payments to them, their deposits of AC4H donations into their personal bank accounts and the Florida timeshare payments out of AC4H's funds were lawful and consistent with AC4H's purpose, they had the opportunity to produce evidence to that effect. In the complete absence of such evidence, we hold that the Secretary's conclusion that the Sheidys used charitable contributions to AC4H in violation of the Act is supported by substantial evidence.

Based upon the foregoing, the Secretary's Final Adjudication is affirmed.

_____<br>
ANNE E. COVEY, Judge

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christy Sheidy and Rick Sheidy | : | |
| t/d/b/a Another Chance 4 Horses, Inc., | : | |
| Petitioners | : | |
| | : | |
| v. | : | |
| | : | |
| Department of State, | : | |
| Bureau of Corporations and | : | |
| Charitable Organizations, | : | No. 189 C.D. 2015 |
| Respondent | : | |

## O R D E R

AND NOW, this 18th day of May, 2016, the Secretary of the Department of State's January 6, 2015 Final Adjudication and Order is affirmed.


_____
ANNE E. COVEY, Judge