IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twin Lakes Utilities, Inc., : CASES CONSOLIDATED
           Petitioner :
            :
       v. : No. 1289 C.D. 2021
            :
Pennsylvania Public Utility :
Commission, :
           Respondent :
 
Aqua Pennsylvania, Inc., :
           Petitioner :
            :
       v. : No. 1359 C.D. 2021
            :
Pennsylvania Public Utility :
Commission, :
           Respondent : Argued: May 16, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT         FILED: August 11, 2022

Before the Court is the petition for review of Twin Lakes Utilities, Inc., and the cross-petition for review of Aqua Pennsylvania, Inc. The petitions request this Court's review of the November 18, 2021, Final Order of the Pennsylvania Public Utility Commission that ordered the acquisition of Twin Lakes Utilities, Inc. by a capable public utility pursuant to Section 529(a) of the Public Utility Code, 66 Pa. C.S. §529(a).[1] The acquisition was conditioned on Middlesex Water Company, the parent company of Twin Lakes Utilities, Inc., placing $1.675 million in escrow

---

[1] Section 529(a), which is set forth *infra*, in the text of the opinion, authorizes the Commission to "order a capable public utility to acquire a small water or sewer utility" in certain enumerated circumstances. 66 Pa. C.S. §529(a).

to be used to remediate the existing infrastructure of the utility's water system. Twin Lakes Utilities, Inc. challenges only the imposition of the escrow condition in the Final Order. Aqua Pennsylvania, Inc., the capable water utility chosen for the acquisition of the water system, challenges the merits of the Final Order, arguing that the Section 529 petition should have been denied. After review, we affirm the Final Order.

## Background

Middlesex Water Company (Middlesex) is incorporated, headquartered and registered as a public utility in New Jersey. In 2008, Middlesex requested the Public Utility Commission (PUC or Commission) to approve its acquisition of a water utility, then owned by Twin Lakes Water Services, LLC, which served approximately 114 residential customers in Shohola Township, Pike County, Pennsylvania. In that application, joined by Twin Lakes Water Services, LLC, Middlesex stated it would create a Pennsylvania-domiciled corporate subsidiary to hold the water system assets, including the certificate of public convenience required to operate the small water utility. *See* 66 Pa. C.S. §529(m) (defining a small water utility as a "public utility which regularly provides water service to 1,200 or fewer customer connections").

On March 2, 2009, the PUC approved the sale of the water system then owned by Twin Lakes Water Services, LLC to Middlesex. Reproduced Record at 2668a (R.R. __). The PUC's 2009 order further stated as follows:

> 2. That upon receipt of a notice of closing, *a Certificate of Public Convenience shall be issued* pursuant to Section 1101 of the Public Utility Code, 66 Pa. C.S. §1101, *authorizing Middlesex Water Company* to begin to offer, render, furnish, or supply water service to the public in the Sagamore Estates development, located in Shohola Township, Pike County.

2

3. That upon receipt of a notice of closing, a Certificate of Public Convenience shall be issued pursuant to Section 1102(a)(2) of the Public Utility Code, 66 Pa. C.S. §1102(a)(2), evidencing Commission approval for the abandonment by Twin Lakes Water Services, LLC of all public water service.

R.R. 2668a (emphasis added). On April 6, 2009, Middlesex incorporated a Pennsylvania subsidiary; 100% of its stock is owned by Middlesex. On November 6, 2009, the transaction closed. On November 16, 2009, the Pennsylvania subsidiary, "Twin Lakes Utilities, Inc." (Twin Lakes), notified the PUC of its adoption of the tariff "presently in effect for Twin Lakes Water Services, LLC." R.R. 2672a.[2] Twin Lakes began to operate the water system. However, the "Certificate of Public Convenience" referenced in the March 2009 order was not issued either to Middlesex or to Twin Lakes.

Twin Lakes does not operate the water system by using its own employees but, rather, pays Middlesex to provide these services. Middlesex has provided financial support to Twin Lakes by extending it credit in three promissory notes totaling $2,665,486. The inter-company agreements between Middlesex and Twin Lakes were not approved by the PUC in advance of their effective dates.

The Twin Lakes water system is comprised of two wells: Well No. 1, which is inoperable, and Well No. 2, which is the system's only working well and is at risk of collapse due to over-pumping. The water system has suffered service issues, frequent boil water advisories, and periodic suspensions of water service.

---

[2] On April 4, 2011, Middlesex requested, by letter, the PUC to recognize Twin Lakes, not Middlesex, as the owner of the small water utility. On May 17, 2011, the Secretary of the PUC, Rosemary Chiavetta, responded by letter, as follows: "Since [Middlesex's] current tariff already bears the name Twin Lakes Utilities, Inc., tariff supplements were not filed as per the Public Utility Code, 52 Pa. Code §53.5 [Name changes]. This letter is to notify you that the Commission records now recognize Middlesex Water Company as Twin Lakes Utilities, Inc." R.R. 2647a.

The water system requires infrastructure repairs and other costly improvements. These problems led to Twin Lakes requesting, and receiving, three rate increases from the PUC since 2011, with two of those increases tied to improvements to the water system.

On May 28, 2020, Middlesex demanded Twin Lakes' payment of $2,420,398.99, which was the amount owed on the three outstanding promissory notes. Twin Lakes was unable to meet this demand, and, therefore, on June 1, 2020, Middlesex terminated its service agreement with Twin Lakes.

Given the problems with the water system and the withdrawal of operational and financial support from Middlesex, Twin Lakes notified its customers that water service would cease at 12:01 a.m. on September 1, 2020. The notification explained that Twin Lakes lacked the funds to maintain water quality or to distribute water to its customers. Further, it was unable to establish a credit relationship with a financial institution. Ultimately, Middlesex and Twin Lakes entered into an amended service agreement that temporarily extended Middlesex's service to the water system.

Meanwhile, Twin Lakes filed a petition under Section 529 of the Public Utility Code, requesting the PUC to authorize the acquisition of Twin Lakes by a capable public utility. On September 17, 2020, the PUC concluded that Twin Lakes' petition was an appropriate petition and directed the PUC's Bureau of Investigation and Enforcement to participate in the Section 529 proceeding. By order of January 14, 2021, the PUC appointed Aqua Pennsylvania, Inc. (Aqua) to act as receiver of the water system during the pendency of the Section 529 proceeding.

Following evidentiary hearings and briefing, on April 22, 2021, PUC Deputy Chief Administrative Law Judge (ALJ) Joel H. Cheskis issued a

4

Recommended Decision that Twin Lakes' Section 529 petition for acquisition by a capable public utility be granted. The ALJ acknowledged that "[n]ever before" has the PUC been asked to evaluate a Section 529 application submitted by a Pennsylvania small water utility "that is also owned by a larger corporate entity." ALJ Recommended Decision, 4/22/2021, at 31. The ALJ recommended that Middlesex be required to place $1.675 million into escrow as a condition of the approval of Twin Lakes' petition.

The ALJ set the escrow amount on the basis of the work needed to upgrade the Twin Lakes water system and the financing available for that project. Twin Lakes had been approved for a grant of $4,660,027 and a loan of $304,573 from the Pennsylvania Infrastructure Investment Authority (PennVEST), which provides grants and low-interest loans for improvements to publicly or privately-owned drinking water systems. However, the PennVEST grant and loan created a tax liability of $1,358,000. The escrow amount of $1.675 million would cover both the loan and the tax liability incurred by using PennVEST financing to upgrade the Twin Lakes water system.

The ALJ recommended that Twin Lakes be acquired by Aqua, a capable water utility with approximately 443,000 customers. The ALJ found that the acquisition of Twin Lakes would not result in an unreasonable increase in Aqua's current rates. ALJ Recommended Decision, 4/22/2021, Findings of Fact Nos. 74, 75, and 77. The ALJ recommended that Aqua and Twin Lakes be ordered to engage in good-faith, arms-length negotiations regarding the sale price of the water system,

5

subject to the PUC's approval.[3]  Both Aqua and Twin Lakes filed exceptions to the ALJ's Recommended Decision.

Twin Lakes argued that the ALJ erred in holding that the PUC has jurisdiction over Middlesex, a foreign corporation with no ties to the Commonwealth.  Rather, Twin Lakes, a Pennsylvania corporation, is the utility subject to the PUC's regulatory authority.  Twin Lakes further asserted that the PUC, as an administrative agency and not a court of general jurisdiction, lacked the authority to assert personal jurisdiction over Middlesex on the "minimum contacts" theory of *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945).  Finally, Twin Lakes argued that the escrow condition was improper because financial considerations relevant to quality of service are appropriately addressed in a base rate filing, not in a Section 529 proceeding.  Moreover, the escrow condition constituted an unconstitutional taking from Middlesex without just compensation in violation of due process.

For its part, Aqua argued that Twin Lakes is using Section 529 for the improper purpose of allowing Middlesex to divest itself of a non-performing asset. It is uncontroverted that Middlesex owns 100% of the stock of Twin Lakes and is the source of Twin Lakes' operational and financial support.  Aqua contended that Middlesex is capable of operating the water system, and a Section 529 proceeding was not intended to allow a utility, such as Middlesex, to shed a poor performing segment of its business.  Aqua asserted that because Twin Lakes has a financially

---

[3] If Twin Lakes and Aqua are unable to agree upon a price, or if the PUC disapproves the acquisition price, Aqua will be required to purchase the water system at a price established pursuant to the eminent domain provisions of the Eminent Domain Code, 26 Pa. C.S. §§101-1106. *See* 66 Pa. C.S. §529(e).

and operationally capable corporate parent, *i.e.*, Middlesex, Twin Lakes' Section 529 petition should be denied.

On November 18, 2021, the PUC issued its Final Order. It denied the exceptions and adopted the ALJ's Recommended Decision. In doing so, the PUC made additional findings of fact. It found that Twin Lakes was the "alter ego" of Middlesex; that Middlesex holds the utility licenses; and that the service agreements between Middlesex and Twin Lakes were void because they were never approved by the PUC. PUC Final Order, 11/18/2021, at 51.

Twin Lakes petitioned for this Court's review.[4] In response, Aqua filed a cross-petition. The matters were consolidated for appeal.[5]

In its challenge to the Final Order, Twin Lakes raises two issues. First, it argues that the record evidence does not support the legal conclusion that Twin Lakes is the alter ego of Middlesex, noting, *inter alia*, that the PUC granted the Section 529 petition of Twin Lakes. Second, it argues that the PUC lacked statutory

---

[4] Twin Lakes filed an application to stay that part of the Final Order requiring Middlesex to escrow funds in the amount of $1.675 million. After review of the parties' submissions and a telephonic argument, the Court issued a stay of the entire Final Order. This Court concluded that Twin Lakes raised a substantial question of the PUC's jurisdiction over Middlesex and its statutory authority to impose the condition of an escrow account in its grant of a Section 529 petition. Actions in violation of either constitutional or statutory law constitute irreparable harm. On the other hand, Aqua made compelling arguments that it would suffer harm were it required to continue to negotiate a purchase price for the acquisition of the water system without the escrow fund. By staying the PUC's Final Order, Aqua was relieved of the requirement to negotiate with Twin Lakes pending the outcome of the appeal. *Twin Lakes Utilities, Inc. v. Pennsylvania Public Utility Commission/Aqua Pennsylvania, Inc. v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., Nos. 1289, 1359 C.D. 2021, filed December 23, 2021).

[5] This Court's review of a PUC adjudication determines "whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are, or are not, supported by substantial evidence." *Barasch v. Pennsylvania Public Utility Commission*, 493 A.2d 653, 655 (Pa. 1985). As to questions of law, this Court's scope of review is plenary, and its standard of review is *de novo*. *See Popowsky v. Pennsylvania Public Utility Commission*, 910 A.2d 38, 48 (Pa. 2006).

authority to condition the grant of Twin Lakes' Section 529 petition upon the funding of an escrow account in the amount of $1.675 million by Middlesex, the out-of-state parent of Twin Lakes. In addition, the condition denied Middlesex due process of law.

Aqua also raises two issues. First, it argues that the PUC erred by divorcing its consideration of Twin Lakes' capabilities from the capabilities of Twin Lakes' alter ego, Middlesex. Specifically, Aqua contends that the PUC erred and abused its discretion in granting Twin Lakes' Section 529 petition because Middlesex is capable of providing and maintaining adequate, efficient, safe, and reasonable service in the future. Second, and in the alternative, it argues that the escrow condition imposed by the PUC was proper and fully consistent with the powers afforded the PUC under the Public Utility Code.

**Analysis**

We begin with a review of the PUC's statutory authority. Section 501(b) of the Public Utility Code states that the PUC "shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth." 66 Pa. C.S. §501(b). Section 102 defines a "public utility," in pertinent part, as follows: "(1) *Any person or corporations* now or hereafter *owning or operating in this Commonwealth equipment or facilities for*: . . . (ii) Diverting, developing, pumping, impounding, distributing, or *furnishing water to or for the public* for compensation." 66 Pa. C.S. §102 (emphasis added).

Chapter 11 of the Public Utility Code establishes the requirement that a public utility hold a certificate of public convenience. Section 1101 states, in pertinent part, as follows:

> Upon the application of any proposed utility and the approval of such application by the Commission *evidenced by its certificate*

*of public convenience first had and obtained*, it shall be lawful for any such proposed public utility to begin to offer, render, furnish, or supply service with this Commonwealth . . . .

66 Pa. C.S. §1101 (emphasis added). Section 1102 states, in pertinent part, as follows:

> (a) General rule.**--***Upon the application of any public utility and the approval of such application by the Commission, evidenced by its certificate of public convenience* first had and obtained, and upon compliance with existing laws, *it shall be lawful*:
>
> * * * *
>
> (2) *For any public utility to abandon or surrender, in whole or in part, any service* . . . .

66 Pa. C.S. §1102(a)(2) (emphasis added). Notably, Chapter 11 has endowed the PUC with the authority to impose conditions upon a certificate of public convenience "as it may deem to be just and reasonable," and "[a]ny holder of a certificate of public convenience . . . shall be deemed to have waived any and all objections to the terms and conditions of such certificate." 66 Pa. C.S. §1103(a).

With this background, we turn to the issues on appeal.

## I.

Both petitioners address the issue of whether Twin Lakes is, in fact, the "alter ego" of Middlesex, and we begin our analysis there. Aqua asserts that Middlesex and Twin Lakes are one and the same. Twin Lakes asserts that the record is devoid of evidence that the corporate formalities were not honored by Middlesex and Twin Lakes, and, thus, there is no basis for piercing the corporate veil between the two corporations. The PUC now explains that it used the "alter ego" description in a regulatory, not a corporate governance, sense.

9

There is little doubt that Middlesex and Twin Lakes are closely related, sharing many of the same corporate officers, the same general counsel, and the same business address. Middlesex is the sole source of capital for Twin Lakes and owns all of Twin Lakes' stock. Through its service agreement, Middlesex provides the services to Twin Lakes' customers, such as billing and meter readings. Middlesex makes the managerial decisions for Twin Lakes. R.R. 366a, 920a, and 1378a. The close affiliation of the two corporations is apparent from the simple fact that Twin Lakes is asserting due process claims on behalf of Middlesex.

Nevertheless, there is a "strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (citation omitted). A corporation must be regarded as a separate person "even if its stock is owned by one person." *Id*. (quotation and citation omitted). Only in "specific, unusual circumstances" can the corporate form be disregarded. *Id*. (quotation and citation omitted). Otherwise, the purpose of the corporate entity will be rendered useless. *Id*.

An out-of-state utility can do business in Pennsylvania. *Indianapolis Power & Light Company v. Pennsylvania Public Utility Commission*, 711 A.2d 1071, 1086 (Pa. Cmwlth. 1998) ("out-of-state utilities . . . enter the state under their own volition . . ."). Further, the PUC has the authority "to supervise and regulate all public utilities doing business" in the Commonwealth, whether organized as a Pennsylvania or a foreign corporation. 66 Pa. C.S. §501(b). Here, Middlesex is a foreign corporation that operates a utility business in Pennsylvania along with its corporate subsidiary, Twin Lakes.

Middlesex established a separate corporation to own and operate the Pennsylvania small water utility to limit its liability, which is the purpose of using

10

the corporate form. Aqua's argument that Middlesex should not be allowed to shed a non-performing sector of its business is not persuasive; that is the very purpose of a corporate subsidiary. The record does not contain evidence of the "unusual circumstances" that would allow the PUC to treat Twin Lakes and Middlesex as the same person. *Lumax*, 669 A.2d at 895. There is no evidence of failure to adhere to corporate formalities or the use of the corporate form to perpetuate a fraud. *Department of Environmental Resources v. Peggs Ken Coal Company*, 423 A.2d 765, 768 (Pa. Cmwlth. 1980).

We reject the argument of Aqua that Middlesex is the corporate "alter ego" of Twin Lakes for all purposes. However, this is not dispositive of whether the PUC had authority to approve the Section 529 petition of Twin Lakes and impose a condition upon Middlesex to escrow $1.675 million.

**II.**

In granting Twin Lakes' Section 529 petition, the PUC ordered Aqua to acquire the water system. The PUC adopted the analysis of the ALJ that even if Middlesex was the applicant for the acquisition by a capable utility, this was the necessary outcome, explaining as follows:

> [E]ven if the Section 529 examination [was] of the facts regarding Middlesex Water Company as the appropriate entity, the conclusion would be the same, since, as the record reflects, Middlesex's sustained failure to invest in financial, operational and managerial capital to sustain the Twin Lakes[] water system, itself[,] warranted a conclusion that a Section 529 acquisition is appropriate in the circumstances.

PUC Final Order, 11/18/2021, at 22-23. Accordingly, the PUC approved the acquisition of Twin Lakes by a capable public utility, *i.e.*, Aqua.

11

In challenging the Final Order, Aqua argues that Middlesex has the financial and managerial ability to provide adequate water service to the Sagamore Estates community. Aqua believes that the PUC should employ the enforcement tools available under the Public Utility Code to make Middlesex fulfill its obligations as a public utility doing business in Pennsylvania.

Section 529 of the Public Utility Code states, in pertinent part, as follows:

> (a) General rule.--The Commission may order a capable public utility to acquire a small water or sewer utility if the Commission, after notice and an opportunity to be heard, determines:
>
> > (1) that the small water or sewer utility is in violation of statutory or regulatory standards, including, but not limited to, the act of June 22, 1937 (P.L. 1987, No. 394) [*as amended*, 35 P.S. §§691.1-691.1001], known as The Clean Streams Law, the act of January 24, 1966 (1965 P.L. 1535, No. 537) [*as amended*, 35 P.S. §§750.1-750.20a], known as the Pennsylvania Sewage Facilities Act, and the act of May 1, 1984 (P.L. 206, No. 43) [35 P.S. §§721.1-721.17], known as the Pennsylvania Safe Drinking Water Act, and the regulations adopted thereunder, which affect the safety, adequacy, efficiency or reasonableness of the service provided by the small water or sewer utility;
> >
> > (2) that the small water or sewer utility has failed to comply, within a reasonable period of time, with any order of the Department of Environmental Resources or the Commission concerning the safety, adequacy, efficiency or reasonableness of service, including, but not limited to, the availability of water, the potability of water, the palatability of water or the provision of water at adequate volume and pressure;
> >
> > (3) that the small water or sewer utility cannot reasonably be expected to furnish and maintain adequate, efficient, safe and reasonable service and facilities in the future;

12

(4) that alternatives to acquisition have been considered in accordance with subsection (b) and have been determined by the Commission to be impractical or not economically feasible;

(5) that the acquiring capable public utility is financially, managerially and technically capable of acquiring and operating the small water or sewer utility in compliance with applicable statutory and regulatory standards; and

(6) that the rates charged by the acquiring capable public utility to its preacquisition customers will not increase unreasonably because of the acquisition.

(b) Alternatives to acquisition.--Before the Commission may order the acquisition of a small water or sewer utility in accordance with subsection (a), the Commission shall discuss with the small water or sewer utility, and shall give such utility a reasonable opportunity to investigate, alternatives to acquisition, including, but not limited to:

(1) The reorganization of the small water or sewer utility under new management.

(2) The entering of a contract with another public utility or a management or service company to operate the small water or sewer utility.

(3) The appointment of a receiver to assure the provision of adequate, efficient, safe and reasonable service and facilities to the public.

(4) The merger of the small water or sewer utility with one or more other public utilities.

(5) The acquisition of the small water or sewer utility by a municipality, a municipal authority or a cooperative.

66 Pa. C.S. §529(a)-(b).

Aqua argues that the PUC should make Twin Lakes viable by, *inter alia*, imposing civil penalties upon Middlesex and pursuing criminal charges. This alternative precludes a grant of the Section 529 petition. 66 Pa. C.S. §529(a)(4).

Aqua's argument minimizes the challenge of pursuing and collecting these civil penalties from a foreign corporation. More importantly, civil penalties would go to the Commonwealth's General Fund and could not be used to remediate the Twin Lakes water system. Because Middlesex argues it does not hold or need a certificate of public convenience, a putative action against its license would not have efficacy. We reject Aqua's argument that Middlesex can be forced to operate the small water utility successfully if the PUC simply brings all its regulatory and enforcement tools to bear upon it. Indeed, the argument presumes that the PUC's exercise of prosecutorial discretion can be directed by court order. However, an agency's decision not to prosecute is beyond judicial review. *See Seeton v. Adams*, 50 A.3d 268, 275 (Pa. Cmwlth. 2012) ("the decision not to prosecute criminal charges is beyond judicial review under any theory"); *In re Frawley*, 364 A.2d 748, 749 (Pa. Cmwlth. 1976) (the doctrine of prosecutorial discretion also applies to enforcement decisions of administrative agencies); *D.E.L.T.A. Rescue v. Bureau of Charitable Organizations*, 979 A.2d 415, 428 (Pa. Cmwlth. 2009) (agency's exercise of prosecutorial discretion "should not be judicially disturbed").

In any case, the PUC concluded that a small water utility that serves 114 customers is not and cannot be viable as a stand-alone entity. Further, the past performance of this small water utility cannot support a reasonable expectation that it can provide safe and reliable service for the system's customers. 66 Pa. C.S. §529(a)-(b). The PUC concluded that this was the case regardless of whether the utility is Twin Lakes, Middlesex or both.[6] It explained:

> In the present case, the ALJ concluded that the abject
> failure to perform the basic statutory duties to the customers

---

[6] Section 102 of the Public Utility Code defines "public utility" as any "person or *corporations* . . . owning or operating facilities for distributing water. . . ." 66 Pa. C.S. §102 (emphasis added).

14

served by the Twin Lakes[] water system, since the system was acquired by Middlesex in 2008, establishes substantial and persuasive evidence of the reasonable future expectation that the Twin Lakes system, *whether deemed to be under the auspices of Twin Lakes as a* [*stand-alone*] *entity, or under the auspices of the corporate parent/owner, Middlesex*, will continue to drastically fail to meet the basic requirements for the provision of safe and reliable water service for the system's customers in the future. We agree.

\* \* \* \*

Given the demonstrated and prolonged failure of Twin Lakes to meet its service obligations, there is ample evidence to conclude that the circumstances will continue.

Based upon the demonstrated and prolonged failure of Twin Lakes and Middlesex, whether viewed separately, or as one in the same, to furnish the necessity of safe and adequate water service to the customers of the Twin Lakes system, we find that there is no basis to form a reasonable expectation that the utility will perform its statutory duty in the future, per Section 529(a)(3). Under Section 529(a)(3), the Commission determines more than the utility's future *ability* to perform its statutory duty[;] the Commission determines whether there is a reasonable future expectation that the utility *will perform* its statutory duty. Therefore, we reject Aqua's argument that Twin Lakes, by virtue of Middlesex's demonstrated ability to provide the financial, managerial and operational resources necessary for the adequate provision of water service to Twin Lakes' customers precludes a finding that Twin Lakes satisfies the criteria under Section 529(a)(3).

PUC Final Order, 11/18/2021, at 49-50 (emphasis in original). The record supports the PUC's findings and conclusions.

Given the shortcomings in Twin Lakes' water service since 2008, the PUC properly ordered its acquisition by a capable utility. Whether that small water utility is regarded as Twin Lakes or Middlesex, the PUC properly ordered its

15

acquisition under Section 529(a) of the Public Utility Code, and we reject Aqua's challenge to the merits of the PUC's Final Order.

## III.

We turn, next, to the issue of whether the PUC properly required Middlesex to escrow $1.675 million to offset the costs of replacing or remediating the existing infrastructure of the water system. Twin Lakes challenges that condition as not authorized by the Public Utility Code and as violative of Middlesex's due process rights. Aqua and the PUC argue otherwise.

Twin Lakes argues that the PUC does not have the authority to require Middlesex to escrow funds because there is no express provision for this escrow account in Section 529 of the Public Utility Code. Further, Twin Lakes contends that the escrow condition imposed by the PUC amounts to a taking from Middlesex without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution[7] because Middlesex was not given notice and an opportunity to be heard on the matter.

The PUC maintains it has the authority and responsibility to act in the public interest and, due to the unique circumstances of this case, to require Middlesex to escrow $1.675 million to offset the costs associated with replacing and remediating the Twin Lakes water system. Aqua supports the PUC's position in this regard.

---

[7] The Fifth Amendment to the United States Constitution reads, in pertinent part: "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The Fourteenth Amendment to the United States Constitution reads, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

Section 529(e) of the Public Utility Code authorizes the PUC to approve or disapprove the negotiated price reached by the parties to a Section 529 acquisition, but it does not specifically authorize the PUC to impose conditions precedent to the negotiation and determination of that price or to impose an exit fee. *See* 66 Pa. C.S. §529(e). The PUC's order for Middlesex to escrow funds may make good public policy, but it must also have support in the Public Utility Code.

For this support, the PUC directs the Court to Section 1103(a), which states as follows:

> (a) General rule.--Every application for a certificate of public convenience shall be made to the Commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the Commission may require by its regulations. A certificate of public convenience shall be granted by order of the Commission, only if the Commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. *The Commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.* In every case, the Commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.

66 Pa. C.S. §1103(a) (emphasis added). The PUC also relies upon Section 529(e) of the Public Utility Code, which states, in pertinent part:

> (e) Acquisition price.--*The price for the acquisition of the small water or sewer utility* shall be determined by agreement between the small water or sewer utility and the acquiring capable public utility, *subject to a determination by the Commission that the price is reasonable*. If the small water or sewer utility and the acquiring capable public utility are unable to agree on the acquisition price or the Commission disapproves the acquisition

17

price on which the utilities have agreed, the Commission shall issue an order directing the acquiring capable public utility to acquire the small water or sewer utility by following the procedure prescribed for exercising the power of eminent domain pursuant to the . . . Eminent Domain Code.

66 Pa. C.S. §529(e) (emphasis added). Finally, a utility has the right to abandon or surrender service, pursuant to Section 1102(a)(2) of the Public Utility Code, 66 Pa. C.S. §1102(a)(2), with the PUC's approval.

The PUC imposed the escrow condition to ensure that the water system would be remediated without placing the burden either on the 114 customers who reside in Sagamore Estates or on the customers of the capable public utility, *i.e.*, Aqua. "Since the PUC is a creature of statute, it has only those powers which are expressly conferred upon it by the Legislature *and those powers which arise by necessary implication*." *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 794 (Pa. 1977) (emphasis added). Here, the Section 529 petition was filed by a small water utility that lacked a formal certificate of public convenience and operated a water system in substantial disrepair. Faced with this circumstance, the PUC treated Twin Lakes' petition as involving both Section 1103(a) and Section 529(e) of the Public Utility Code. It imposed the condition of the escrow fund under authority of Section 1103(a), which authorizes the PUC to "impose such conditions as it may deem to be just and reasonable" upon a utility's certificate of public convenience. 66 Pa. C.S. §1103(a). Essentially, the Final Order clarified that Middlesex was a certificated public utility and imposed a condition on that certificate, in the form of an escrow of $1.675 million.

Twin Lakes owns the water system and operated it prior to the receivership, but it did so without a license, making it, in the PUC's nomenclature, a "*de facto* utility." *See* PUC Brief at 8, n.7. The "Certificate of Public

Convenience" contemplated by the PUC's March 2009 order was never issued either to Middlesex or to Twin Lakes. At the request of Middlesex, the PUC recognized "Middlesex Water Company as Twin Lakes Utilities, Inc."[8] R.R. 2647a. Neither Middlesex nor Twin Lakes took steps to clarify that more than a name change was involved in this request by Middlesex. The Section 529 proceeding became the vehicle for ending the ambiguity surrounding the small water utility known as Twin Lakes and setting the terms of Middlesex's licensing and abandonment of its Pennsylvania utility.[9]

Middlesex entered Pennsylvania of its own volition in order to own and operate a small water utility. *Indianapolis Power & Light Company*, 711 A.2d at 1086. To that end, Middlesex needed a certificate of public convenience from the PUC. It cannot now complain that its license status has been resolved and includes the condition that it escrow $1.675 million. *See* 66 Pa. C.S. §1103(a) ("A certificate of public convenience shall be granted by order of the Commission, only if the Commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. The Commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.").

Further, Section 501 (General Powers) of the Public Utility Code provides, in pertinent part, as follows:

> (a) Enforcement of provisions of part.--In addition to any powers expressly enumerated in this part, the Commission shall have full power and authority, and it shall be its duty to enforce, execute and carry out, by its regulations, orders, or otherwise, all and

---

[8] *See supra*, note 2.

[9] The proceeding also concerned the application of Twin Lakes (and Middlesex) for a *nunc pro tunc* approval of the service agreement and promissory notes. R.R. 199a.

19

singular, the provisions of this part, and the full intent thereof; *and shall have the power to rescind or modify any such regulations or orders.* The express enumeration of the powers of the Commission in this part shall not exclude any power which the Commission would otherwise have under any of the provisions of this part.

(b) Administrative authority and regulations.**--***The Commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth.* The Commission may make such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties.

66 Pa. C.S. §501(a)-(b) (emphasis added). The PUC's authority to modify its March 2009 order, read together with its power to impose reasonable and just conditions upon the license sought and required by Middlesex, provided the PUC the statutory authority to impose the escrow condition upon Middlesex.

We reject the contention that Middlesex was denied due process. Middlesex chose to offer water service in Pennsylvania through a subsidiary and then, as manager of that subsidiary, directed it to file the Section 529 petition. It was not a passive investor. It participated in the Section 529 proceeding, both before the PUC and this Court, vigorously challenging the escrow condition. Middlesex effectively initiated the instant Section 529 proceeding, which fully comported with due process.

In sum, Middlesex, on its own volition, entered the Pennsylvania utility marketplace, thereby subjecting itself to the PUC's jurisdiction. It was the only corporation entity authorized to offer water service in Pennsylvania, which required a certificate of public convenience. Middlesex "waived any and all objections to the terms and conditions of such certificate," 66 Pa. C.S. §1103(a), including the

20

requirement that it escrow $1.675 million. Our holding to uphold the escrow condition imposed in the Final Order is limited to the unique factual circumstances of this case.

## Conclusion

For the foregoing reasons, we affirm the PUC's Final Order directing the sale of Twin Lakes to Aqua (and directing Aqua and Twin Lakes to enter into negotiations regarding the sale) and ordering Middlesex to place $1.675 million into an escrow fund.

_____
MARY HANNAH LEAVITT, President Judge Emerita


Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Twin Lakes Utilities, Inc., | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | No. 1289 C.D. 2021 |
| | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |
| | | |
| Aqua Pennsylvania, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1359 C.D. 2021 |
| | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 11th day of August, 2022, the November 18, 2021, Final Order of the Pennsylvania Public Utility Commission, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita